**ECRI, a Nonprofit Pennsylvania Corporation,**

v.

**McGRAW–HILL, INC., McGraw-Hill Information Systems Co., and McGraw-Hill Book Co., Appellant.**

**No. 86–1552.**

United States Court of Appeals, Third Circuit.

Argued Dec. 2, 1986.

Decided Jan. 20, 1987.

William M. Dallas, Jr. (argued), Ruth A. Bourquin, Sullivan & Cromwell, New York City, Edward W. Mullinix, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellant.

Steven R. Williams (argued), Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for appellee.

Before ALDISERT, Chief Judge, and WEIS, Circuit Judge, and FISHER,* District Judge.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The district court granted a preliminary injunction enforcing a contract and requiring defendant to continue publishing technical material prepared by plaintiff. Because the findings do not take into account a termination provision in the agreement, we conclude that plaintiff did not demonstrate irreparable harm. Consequently, we will vacate the preliminary injunction and remand for further proceedings.

The plaintiff ECRI is a non-profit corporation that works toward the improvement of the safety and quality of patient treat-

---

* The Honorable Clarkson S. Fisher, Chief Judge, United States District Court for the District of New Jersey, sitting by designation.

ment through testing and evaluating medical equipment for the health care industry. ECRI also publishes a substantial amount of material in this field. The company employs about 117 persons, many of them health care specialists, and in 1985 had gross revenues of about $5.5 million.

The defendant McGraw-Hill is a well-established publisher that produces specialized books, periodicals, and other products for a number of professions, including those in health care. McGraw-Hill decided that a market existed for information services devoted to technology and equipment in hospital and medical laboratories. Because ECRI was already active in such an enterprise, McGraw-Hill began negotiations that culminated in an agreement in 1983.

The parties executed a ten-year contract for the production of loose-leaf subscription services. ECRI agreed to develop "Product Comparison Systems Services," and in turn, McGraw-Hill would print and market the publications. As part of the transaction, ECRI sold to McGraw-Hill two existing publications, the Hospital Product Comparison System and the Laboratory Product Comparison System.

McGraw-Hill agreed to reimburse ECRI for overhead, time, materials, and other developmental costs, and in return would receive the copyright for the publications developed by ECRI under the contract. The agreement also included early termination and non-competition clauses.

The arrangement worked well until January, 1985, when the relationship deteriorated, according to the district court, as a result of a shift in McGraw-Hill management personnel. Because the newly-assigned executives lacked detailed knowledge of the company's arrangements with ECRI, they blundered into situations causing friction between the parties. A number of disputes arose, the two most serious being ECRI's alleged failure to place the McGraw-Hill copyright on the newly-developed Operating Room Management Service and ECRI's agreement to provide the Voluntary Hospitals of America with a Medical Equipment Service. The latter was called the VHA Equip +, a consultation service geared to a hospital's specific request.

At the center of the controversy apparently was McGraw-Hill's belief that ECRI was diverting resources properly allocable to the contract to competing enterprises. ECRI asserted that its activities were outside of, and not in conflict with its contractual obligations. That the ECRI arrangement showed continuing losses, although anticipated at the inception of the agreement by McGraw-Hill's then controlling management, was perhaps an additional underlying and unexpressed element of conflict.

After some unproductive meetings between the parties, McGraw-Hill on May 8, 1986, announced its intention to terminate the agreement pursuant to its ¶ 8(a) because ECRI had materially breached the copyright and non-competition provisions. ECRI filed this suit on June 6, 1986, requesting a declaratory judgment, specific performance, and a preliminary injunction.

The district court granted a temporary restraining order, and after hearing six days of testimony, granted ECRI a preliminary injunction on August 19, 1986. The order prohibited McGraw-Hill from terminating the contract and required specific performance pendente lite.

The court found that ECRI would succeed on the merits of its breach of contract claim because its independent activities were beyond the scope of the contract and protected by it. Moreover, the alleged copyright claims were without merit. The court concluded that ECRI had demonstrated irreparable harm would result if an injunction did not issue.

ECRI projected approximately $500,000 in operating losses for 1986 if the agreement were terminated. Included in that calculation was $230,000 of anticipated overhead expenses that would have been paid by McGraw-Hill and would no longer be available. Although ECRI had equity in its building, the company's chief financial officer testified that he "anticipated problems" in securing a new mortgage.

With the loss of income from McGraw-Hill, the court concluded that ECRI would be unable to purchase supplies on credit and would be forced to discharge about twenty-three persons. In addition, the court found that McGraw-Hill's termination would cost ECRI loss of good will and reputation. On the other hand, enforcing the contract would serve the public interest by permitting ECRI to continue its service to the health care industry.

On appeal McGraw-Hill disagrees with the district court's evaluation of ECRI's likelihood of success and contends that granting the preliminary injunction was an abuse of discretion. Its strongest argument, however, and one which we find dispositive, is that ECRI failed to prove irreparable harm.

■ In reviewing the grant of a preliminary injunction, we are limited to determining whether there has been "an abuse of discretion, an error of law, or a clear mistake on the facts." *Allegheny County Sanitary Auth. v. United States Environmental Protection Agency*, 732 F.2d 1167, 1177 (3d Cir.1984). At the trial level, the party seeking a preliminary injunction bears the burden of producing evidence sufficient to convince the court that (1) the movant has shown a reasonable probability of success on the merits; (2) the movant will be irreparably injured by denial of relief; (3) granting preliminary relief will not result in even greater harm to the other party; and (4) granting preliminary relief will be in the public interest. *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1254 (3d Cir.1985).

■ Establishing a risk of irreparable harm is not enough. A plaintiff has the burden of proving a "clear showing of immediate irreparable injury." *Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 359 (3d Cir.1980). The "requisite feared injury or harm must be irreparable—not merely serious or substantial," and it "must be of a peculiar nature, so that compensation in money cannot atone for it." *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir.1977). "[W]e have never upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law." *In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137, 1145 (3d Cir.1982).

■ When the claim is based on a breach of contract, irreparable injury may be found in two situations: (1) where the subject matter of the contract is of such a special nature or peculiar value that damages would be inadequate; or (2) where because of some special and practical features of the contract, it is impossible to ascertain the legal measure of loss so that money damages are impracticable. *A.L.K. Corp. v. Columbia Pictures & Indus., Inc.*, 440 F.2d 761, 763 (3d Cir.1971) (citing 4 J. Pomeroy, *Treatise on Equity Jurisprudence* § 1401 (5th ed. 1941)). The standards for the grant of a preliminary injunction are equally applicable to a non-profit corporation as to one organized for profit.

■ For purposes of discussion, we assume that ECRI would be able to establish a breach of contract. Examination of the interest that ECRI has in the contract then becomes necessary. At the outset it is critical to note that the agreement does not entitle ECRI absolutely to McGraw-Hill's performance for ten years. That position is ruled out because the agreement contains specific provisions governing termination which limit the rights granted. In reality, the termination clauses are the heart of the dispute here.

Paragraph 8(a) of the contract provides that in the event of a material breach by a party, the other may give written notice. Failing correction of the breach within thirty days, the contract may be terminated. This is the provision that McGraw-Hill invoked and on which it relies.

Another provision, however, confers substantial benefits on ECRI. Paragraph 8(b) gives McGraw-Hill "the right, in its sole discretion, to terminate publication of any or all of the Services covered by this Agreement upon ninety (90) days' prior written notice to ECRI." Paragraphs 3(b) and 3(c) give McGraw-Hill discretion to re-

quest that ECRI either develop additional Services or terminate that activity. In the event that McGraw-Hill exercises its rights of termination under ¶ 8(b) or 3(c), ECRI is given the right of first refusal to purchase or license the Services from McGraw-Hill. For a period of ninety days ECRI holds the exclusive right to negotiate with McGraw-Hill. If negotiations are not successful, McGraw-Hill is required to make an offer, which ECRI must accept within thirty days. The district court recognized the significance of the two termination provisions and observed that, even after the injunction issued, McGraw-Hill could exercise its rights under ¶ 8(b).

By alleging a material breach under ¶ 8(a), McGraw-Hill seeks to avoid the first refusal provisions of the contract. But the contractual provisions bind ECRI to relinquish performance by McGraw-Hill if it complies with ¶ 8(b). The loss or injury for which ECRI would be entitled to compensation, therefore, is not what it would suffer because of McGraw-Hill's lack of performance until the end of the ten-year term, but the value of the first refusal provision under ¶ 8(b).

ECRI, however, produced no evidence bearing on the value of the first refusal and limited time extension in ¶ 8(b), and restricted the evidence to monetary loss if McGraw-Hill did not perform the contract. ECRI's projected loss of $500,000 in 1986 as a result of McGraw-Hill's termination raises nothing more than an item of monetary damage. In addition, testimony raised forebodings of a loss of personnel because of the necessity to cut back operations. ECRI's witnesses expressed doubts about the company's ability to secure financing to make up for the loss of income from withdrawal of McGraw-Hill's work. Those witnesses also voiced some concerns about damage to ECRI's reputation in its field.

We have grave doubts that, even absent the termination provision in the contract, this evidence establishes irreparable harm that could not be adequately compensated by an award of damages. When the termination clauses are factored in, however, it becomes clear that ECRI's failure to produce evidence which took that contractual provision into account makes the record critically deficient.

If McGraw-Hill exercised its right to terminate under ¶ 8(b), ECRI would face the choice of allowing the relationship to end without more or invoking its rights to purchase the Services. But the record does not establish whether it would be feasible or desirable for ECRI to exercise its purchase option. A surmise that it would be advantageous to ECRI is not enough to satisfy the burden of sustaining the grant of the preliminary injunction.

The court made no findings on the cost to ECRI to buy the Services, its ability to finance the transaction, or what disruption in ECRI's operations or personnel would have resulted in the event that ¶ 8(b) were invoked. In short, ECRI failed to demonstrate the value to it of the termination provision that McGraw-Hill sought to avoid. Without such evidence we cannot estimate ECRI's injury, let alone determine whether it is irreparable.

We recognize that in some circumstances a court may grant specific performance against a party having the power to terminate the contract. *See* Restatement (Second) of Contracts § 368 (1980); S. Williston, *A Treatise on the Law of Contracts* § 1442 (3d ed. 1968); 5A A. Corbin, *Corbin on Contracts* § 1201 (1964). But the possibility of nullifying the decree must be taken into account. The requirements for the grant of a preliminary injunction are more stringent than those for specific performance. Doubts about the appropriateness of the latter remedy cast a shadow over the evidence of irreparable injury, a factor ECRI failed to address.

ECRI relies heavily on *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197 (2d Cir.1970), where the court granted interim relief prohibiting the termination of an automobile distributorship. Although that case is distinguishable in other aspects, the most significant difference is the absence of any consideration of a termination provi-

sion exercisable at the discretion of the defendant.

Because we find that ECRI failed to meet its burden of establishing irreparable injury, the preliminary injunction cannot stand. Accordingly, the order of the district court will be vacated, and the matter remanded for further proceedings.