**SOLAR TURBINES, INC., Plaintiff,**

v.

**James M. SEIF, Regional Administrator, Region III, U.S. Environmental Protection Agency, and United States Environmental Protection Agency, Defendants.**

Civ. A. No. 88–0221.

United States District Court, M.D. Pennsylvania.

Feb. 12, 1988.

---

Harold A. Kurland, Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., Terry R. Bossert, McNees, Wallace & Nurick, Harrisburg, Pa., for plaintiff.

Tim Haney, Asst. U.S. Atty., Harrisburg, Pa., Bradley S. Bridgewater, Peter Wykoff, U.S. Dept. of Justice, Land & Natural Resources, Washington, D.C., for defendants.

## MEMORANDUM

RAMBO, District Judge.

### Procedural Background

Plaintiff, Solar Turbines, Inc. ("Solar"), filed this action February 10, 1988. Solar is the owner and operator of a gas turbine cogeneration facility currently under construction at a Caterpillar, Inc. plant in York County, Pennsylvania. The defendants are the Environmental Protection Agency ("EPA" or "the Agency") and James M. Seif, the Regional Administrator for Region III of the EPA. Solar seeks relief in the form of a declaratory judgment and a preliminary and permanent injunction. Pursuant to 28 U.S.C. § 2201, plaintiff seeks a declaration that the EPA acted outside its jurisdiction in issuing an Administrative Order directing Solar to halt construction of its power plant. In addition, Solar seeks a temporary and a permanent injunction enjoining the EPA from enforcing its administrative order and from revoking, revising or challenging plaintiff's state-issued construction permit. Solar filed a notice and motion for temporary restraining order ("TRO"), preliminary injunction and confidentiality order along with its complaint on February 10, 1988.

On February 10, 1988 the court conducted a hearing in chambers on the motion for a TRO. All parties were represented by counsel. The court heard arguments, but no witnesses testified, and no exhibits were presented.

### Factual Background

To obtain a permit to construct a facility which will emit air pollutants, a builder must satisfy both state and federal regulations. The federal regulations are found in the Clean Air Act, 42 U.S.C. § 7401 et seq., and the state regulations for the Commonwealth of Pennsylvania are found in the Air Pollution Control Act, 35 Pa.Code, Chapter 23, which requires the builder to obtain a "plan approval," 25 Pa.Code § 127.11, from the Commonwealth of Pennsylvania Department of Environmental Resources ("PADER").

To satisfy the federal regulations, facilities such as Solar's, which will emit a regulated pollutant in excess of specified amounts, must obtain a specific permit—Prevention of Significant Deterioration ("PSD") permit, 42 U.S.C. § 7475. In the Clean Air Act, Congress provided a procedure whereby the appropriate state environmental agencies would be given EPA approval to issue the PSD permits. 42 U.S.C. §§ 7410(a)(2)(D), 7471, implemented by 40 C.F.R. § 51 et seq. PADER received approval for its permit process in 1984.

Before commencing construction at the Caterpillar site, Solar applied to PADER for a construction permit. PADER issued a final permit to Solar on September 9, 1987. On February 1, 1988 Solar received an Administrative Order ("Order") dated January 25, 1988 issued by defendant Seif.

The Administrative Order, relying exclusively on Clean Air Act § 167, 42 U.S.C. § 7477, purports to order plaintiff immediately to cease any construction activity at its gas turbine cogeneration facility, among other things, and to certify to defendant EPA within ten days of receipt of the Administrative Order that plaintiff

has complied with various prohibitions contained in that Administrative Order. Plaintiff's Complaint at ¶ 15.

Solar was to comply with the Order on February 11, 1988.

*Discussion*

The first issue which must be addressed is this court's jurisdiction. Plaintiff argues this court has jurisdiction pursuant to 28 U.S.C. § 1331, federal question. The federal question presented is whether the Clean Air Act and the United States Constitution give defendants power to issue and enforce the order sent to plaintiff. Solar also relies on 28 U.S.C. § 1337, affecting commerce. Plaintiff reasons the court has jurisdiction because Congress' authority to enact the Clean Air Act derives partly from its power under the commerce clause, U.S. Const. art. I, § 8, cl. 3.

The Clean Air Act has two sections delineating federal court jurisdiction in suits filed against the EPA. 42 U.S.C. § 7604, citizens suits, gives district courts jurisdiction over actions "to enforce such an emission standard or limitation, or such an order, or to order the Administrator to perform such an act or duty, as the case may be." The other section which delineates jurisdiction is 42 U.S.C. § 7607(b)(1). This section gives the circuit courts of appeal exclusive jurisdiction to review action taken by the EPA or its administrators which action involved approval or promulgation of implementation plans under various sections of the Clean Air Act or "any other final action of the Administrator under this Act ... which is locally or regionally applicable...." *Id.*

Section 7607(b)(1) has no application here because the EPA's issuance of the Order does not constitute "final action" of the Agency. The EPA, in arguing a point on ripeness and harm, stated unequivocally that the Order issued to Solar is not final action, but rather the first action taken towards a final order which may have an effect on plaintiff. Section 7604 likewise has no application here because the issuance of the Order is clearly not the type of Agency activity addressed by the provision, as discussed above.

On the facts in the case at bar there is no affirmative mandate in the Act conferring jurisdiction on the court, nor is there a mandate stripping jurisdiction from the court. However, in the section of the Act granting district courts jurisdiction over specified action, § 7604 (citizens suits), the statute explicitly states at § 7604(e) (nonrestriction of other rights), "[n]othing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek ... relief against the Administrator or a State agency...." The court finds this section applicable here because Solar seeks review of the Agency's activity under principles of constitutional law (taking of property without due process, fifth amendment, 28 U.S.C. § 1331), under the Administrative Procedure Act (Agency exceeded its authority, violated procedures, and abused its discretion, 5 U.S.C. § 702), and under the Clean Air Act (Agency has acted in excess of its authority under the Act, 42 U.S.C. § 7401 *et seq.*).

Defendants made an argument on the prudential requirement of ripeness. Defendants contend if Agency action is not "final" there is no jurisdiction. They stated further steps had to be taken by the EPA before there is "final action" which will have an effect on the plaintiff. Defendants' countered plaintiff's fear-of-sanction argument with assertions from counsel that the Order was not self-enforcing. Before the EPA could actually shutdown Solar's construction it would have to go to court to seek a court order enforcing its Order or seek injunctive relief. The injunctive relief, counsel said, could be sought whether the EPA had issued an Order or not. In essence, counsel asserted the controversy was not ripe in that plaintiff could not show immediate irreparable harm because the Order itself had "no teeth."

The issue of ripeness and pre-enforcement action was analyzed by the Third Circuit Court of Appeals in *A.O. Smith v. Fed. Trade Comm'n*, 530 F.2d 515 (3d Cir.1976). There the Federal Trade Com-

mission ("FTC" or "Commission") ordered 345 of the nation's largest companies to complete and file Line of Business Reports Forms within 150 days. In the order to the companies, the FTC stated, " 'You are advised that penalties may be imposed under applicable provisions of Federal law for failure to file this report or for the filing of a false report.' " *Id.* at 519. Like the plaintiff in the case at bar, the plaintiffs in *A.O. Smith* sought declaratory and injunctive relief alleging, *inter alia*, the FTC issued the orders without statutory authority and in violation of plaintiffs' constitutional rights. Again, as with Solar, the plaintiffs sought an order enjoining the FTC from enforcing its orders or acting upon them in any manner contradictory to plaintiffs' interests.

The FTC stated as does the EPA here, that the orders were not self-enforcing. Under the statutory scheme the Commission had to go to court to seek enforcement (by means of mandamus), and penalties could not be imposed until notices of default were issued. Thus, argued the government, "until the FTC seeks to enforce its orders, the district courts are without jurisdiction to entertain actions for declaratory and injunctive relief." *Id.* at 520.

The court found "the paramount principles today in deciding whether federal courts have jurisdiction to review administrative actions derive from the Supreme Court's 1967 *Abbott Laboratories* trilogy...." [1] The court embarked on a very close analysis of the *Abbott Laboratories* cases. The court concluded the two major factors for consideration were "(1) the nature of the issues, which [must be] 'purely legal,' ... and (2) the finality of the agency actions." *Id.* at 521. The ultimate issues raised by *A.O. Smith's* plaintiffs were purely legal: did the agency exceed its authority? That legal issue is also the ultimate issue before this court, and the conclusions of the *A.O. Smith* court apply here as well. "Further factual development would not sharpen the issues; nor

does judicial consideration at this stage in any way usurp the [agency's] factfinding prerogatives." *Id.* at 521, 522.

The *A.O. Smith* court found the FTC orders final (initial, renewed, and amended motions made to the FTC to quash the orders had all been denied prior to the commencement of the law suit), and moved on to a ripeness-harm analysis. Although this court does not find the EPA Order final, that ripeness-harm analysis is controlling nonetheless. In *Abbott Laboratories, supra,* the controversy was over a regulation not an order, but the reasoning behind the Court's finding of justiciability is highly applicable here. The Court stated:

> Where the legal issue presented is fit for judicial resolution, and where a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, access to the courts under the Administrative Procedure Act and the Declaratory Judgment Act must be permitted, absent a statutory bar or some other unusual circumstance....

*Abbott Laboratories,* 387 U.S. at 153, 87 S.Ct. at 1518.

The ripeness-harm analysis performed on the *Abbott Laboratories* trilogy yielded the conclusion that "one seeking discretionary relief [injunctive relief is discretionary] may not obtain pre-enforcement judicial review of agency action if there is no immediate threat of sanctions for noncompliance, or if the potential sanction is de minimis." *A.O. Smith,* 530 F.2d at 524. The letter sent with the Order to Solar unequivocally threatens Solar with sanctions for noncompliance. The letter did not specify what the sanctions would or could be, nor did the EPA's counsel proffer information on what the sanctions would or could be. Putting aside the usual statutory penalty fine sanctions and criminal sanctions, the court finds the ultimate sanction

---

**1.** *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *Toilet Goods Ass'n v. Gardner,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967), *Gardner v. Toilet Goods Ass'n,* 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967).

would be an injunction closing down the construction site. The threatened sanction of an injunction closing down the construction site would hang over Solar every single day it would be in noncompliance. Counsel for the Agency made it clear the Agency could seek an injunction at any time to shut-down Solar's construction. Clearly, the threat of this injunction sanction is immediate and as plaintiff has demonstrated it is *not* de minimis.

Plaintiff alleges it already expended approximately $35,000,000 on the project. For every month it is shut-down it will incur unrecoverable direct costs of $1,000,000. Its contracts to supply gas and energy could very well be terminated if the plant is not operational in the time frame anticipated by Solar and its customers. The sanction of shut-down is anything but de minimis. Furthermore, this showing of harm meets the immediate, substantial and irreparable requirements for injunctive relief.

The ripeness argument made by the EPA is not persuasive because of the magnitude of the immediate threatened harm. In addition, courts should not restrict access to judicial review of administrative action except "upon a showing of 'clear and convincing evidence' of a contrary legislative intent...." *Abbott Laboratories,* 387 U.S. at 141, 87 S.Ct. at 1511. As discussed above, the jurisdiction provisions of the Clean Air Act do not evidence such a showing. The facts of this case support a finding in favor of jurisdiction at the district court level under the facts and holding in *A.O. Smith.*

The court finds it has jurisdiction pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 702, and 42 U.S.C. § 7401 *et seq.* Therefore, plaintiff's assertion that the commerce clause is a basis for jurisdiction need not be addressed.

The decision to grant temporary injunctive relief is within the sound discretion of the court. *See, e.g., Ecri v. McGraw–Hill, Inc.,* 809 F.2d 223 (3d Cir.1987); *A.O. Smith Corp. v. Fed. Trade Comm'n., supra.* The relief is extraordinary and should not be granted unless the movant makes a strong showing of its necessity and desirability. The movant has the burden of showing: (1) a reasonable probability of success on the merits; (2) irreparable injury to the movant if relief is denied; (3) that the relief if granted will not harm defendant more than it will help plaintiff; and (4) the public interest is served by granting the relief. *See, e.g., Ecri v. McGraw–Hill, Inc., supra* at 226.

Ultimate success on the merits in this action depends on judicial interpretation of the legislative history and plain language of the Clean Air Act. The provisions of the Act at issue here have not yet been the subject of a law suit.

■ The statutory scheme in the Act, discussed *supra* in the factual background section, supports plaintiff's contention that PADER has been delegated the exclusive authority to issue PSD permits. Congress carefully drew detailed procedures for the EPA to follow when deciding whether to authorize state agencies to issue permits. 42 U.S.C. § 7410 *et seq.* In addition, Congress specifically provided for EPA input into the states' permit process. Nowhere in the Act does it state or even imply that the granting of a permit by an EPA-approved state agency is merely a step along the way to final or lasting approval from the EPA. Furthermore, the legislative history lends credence to plaintiff's position that once a state agency is EPA-approved, it has sole jurisdiction to issue permits in its discretion provided it complies with the EPA-approved procedure for inquiry. *See, e.g.,* H.R.Rep. No. 294, 95 Cong., 1st Sess. (1977) pp. 145, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1077, 1224.

EPA will not be in the business of granting permits unless a State fails to revise and submit an approvable plan in accordance with the requirements of this section or refuses to administer the entire program of prevention of significant deterioration.... Thus, the purposes of setting specific requirements in the bill are (1) to set clear minimum national requirements which will not be subject to legal challenge, (2) to give the States the authority to implement these measures,

(3) to limit EPA's authority to add new requirements, and (4) to prevent EPA from interfering with a State which is properly implementing these measures and meeting the requirements of the act.

In addition to showing a likelihood of success on the merits because of anticipated favorable judicial statutory interpretation, plaintiff has made a strong showing of success based on purely equitable grounds. The EPA, along with whomever else, may object to PADER's issuance of a permit within set time limits. The EPA may be found equitably estopped to contest the validity of Solar's permit so long after its time to object has run.

Plaintiff contends it is building its plant pursuant to a duly issued permit. It contends, by virtue of the statutory scheme for permit issuance, the EPA has no authority at this juncture to take any action contradictory to that permit or contradictory to Solar acting in reliance on that permit. The plain language of the statute, the legislative history, and the principles of equity as applied to the facts satisfy the court plaintiff has a reasonable probability of success on the merits of its claims.

Plaintiff easily meets the requirement that the other party need not be harmed more if relief is granted. The court can see no harm to the EPA if it grants the injunctive relief requested, and the Agency's counsel did not represent the Agency would be harmed.

As to the public interest consideration, plaintiff's counsel stated there would be no pollution emitted from the plant until November, 1988 when it is expected to become operational. Also, plaintiff asserts its plant will produce energy which costs less and pollutes less than the energy-producing facilities it will replace. Thus, the public will not be harmed if injunctive relief is granted.

*Conclusion*

The criteria for the granting of temporary injunctive relief has been met. The court will issue a temporary restraining order enjoining defendants from acting upon the Order or from taking any action adverse or contrary to plaintiff's PADER permit.

### ORDER

In accordance with the accompanying memorandum, IT IS HEREBY ORDERED THAT:

1) Plaintiff's request for a temporary restraining order is granted;

2) Defendants are temporarily enjoined from enforcing the Administrative Order dated January 25, 1988, docket number CAC–III–001, or otherwise revoking, revising, or challenging plaintiff's construction permit until this matter is heard on the merits;

3) A hearing will be held on the merits at 9:30 a.m. on Monday, March 21, 1988. Because this court has previously given dates certain to four complex cases between February 16, 1988 and June 24, 1988, no other dates are available and the parties will be held to this date; and

4) The plaintiff's request for a confidentiality order is denied.