The BLACK & DECKER CORPORATION, a Maryland corporation, and B & D Acquisition Inc., a Maryland corporation, Plaintiffs,

v.

AMERICAN STANDARD INC., a Delaware corporation, and Charles M. Oberly, III, Attorney General of the State of Delaware, and Michael E. Harkins, Secretary of State of State of Delaware, Defendants.

Civ. A. No. 88–50 LON.

United States District Court,
D. Delaware.

Feb. 23, 1988.

1184

Steven D. Goldberg, of Theisen, Lank, Mulford and Goldberg, Wilmington, Del., of counsel, George Beall (argued), Mark D. Gately (argued) and Ty Cobb, and John H. Culver, III of Miles & Stockbridge, Baltimore, Md., for plaintiffs.

R. Franklin Balotti (argued), Jesse A. Finkelstein, Gregory V. Varallo, C. Stephen Bigler, James C. Strum and Daniel A. Dreisbach, of Richards, Layton & Finger, Wilmington, Del., of counsel, John L. Warden, Gandolfo V. DiBlasi, Samuel W. Seymour, and Karen Patton Bogle, of Sullivan & Cromwell, New York City, for defendant American Standard Inc.

A. Gilchrist Sparks, III (argued), Kenneth J. Nachbar, Michael Houghton, and Robert J. Valihura, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendants Oberly and Harkins.

Beverly L. Bove, John E. Sullivan, and Cassandra Faline Kaminski, of Tomar, Seliger, Simonoff, Adourian & O'Brien, Wilmington, Del., of counsel, Robert F. O'Brien, and Mark E. Belland, Haddonfield, N.J., amicus curiae.

## OPINION

LONGOBARDI, District Judge.

The Black & Decker Corporation ("Black & Decker") and B & D Acquisition Inc. ("B & D Acquisition" sometimes both collectively referred to as "Black & Decker"), an indirect wholly-owned subsidiary, filed a lawsuit against American Standard Inc. ("American Standard"), Charles M. Oberly, III, Attorney General of the State of Delaware, and Michael E. Harkins, Secretary of State of the State of Delaware ("Oberly and Harkins"), seeking a declaration that 8 Del.C. § 203 (sometimes referred to as the "Business Combination Statute" or "Section 203") is unconstitutional.

In the immediate proceedings, Plaintiffs seek a preliminary injunction against the Defendants enjoining them from utilizing or enforcing Section 203 against Plaintiffs in their tender offer for all of American Standard's stock. Since some arguments by the parties are predicated upon the facts surrounding both the Business Combination Statute and the tender offer, the material facts are briefly discussed below.

## BACKGROUND

Black & Decker's tender offer commenced on January 27, 1988, with the announced purpose of acquiring control of American Standard and subsequently effecting a merger or similar business combination between American Standard and B & D Acquisition or another affiliate. Black & Decker originally offered $56.00 a share and then increased the offer to $65.00 per share. *See* Supplement to Offer to Purchase accompanying Amendment No. 4 to Black & Decker's Schedule 14D-1 ("Supplemental Offer to Purchase") Exhibit 1 in Reply Brief in Support of Plaintiffs' Motion for Preliminary Injunction ("Plaintiffs' Reply Brief"), Docket Item ("D.I.") 23. Black & Decker initially conditioned the tender offer on, among other things, its ability to purchase at least a majority of the shares outstanding on a fully diluted basis. It disclosed that its financing was conditioned upon Black & Decker obtaining a majority of American Standard's stock. It also conditioned the tender offer on the enactment of the Business Combination Statute and its application to the proposed merger. Offer to Purchase, D.I. 9A at 23–24. If the proposed merger does not occur within one hundred eighty days of the consummation of the tender offer, all of the borrowed funds will become immediately due and payable and all unused commitments will be cancelled on that date. *Id.* at 13. In its Supplemental Offer to Purchase, Black & Decker waived the condition with respect to the enactment of Section 203. Supplemental Offer to Purchase, Exhibit 1 to Plaintiffs' Reply Brief, D.I. 23 at 10. A new condition was added. The tender offer was conditioned upon Black & Decker "being satisfied in its sole discretion that upon the purchase of Shares pursuant to the Offer, [Black & Decker] will be able to cause [American Standard] to elect expressly not to be governed by [Section 203] or [Section 203] otherwise being inapplicable." *Id.* The tender offer is scheduled to close on February 24, 1988, unless Black & Decker, in its sole discretion, extends the period. *Id.* at 3.

The Business Combination Statute at issue here is an outgrowth of the Supreme Court decision in *CTS Corp. v. Dynamics Corporation of America*, — U.S. —, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987). Following the *CTS Corp.* decision, Delaware began considering the adoption of its own second generation takeover statute patterned on the Indiana statute upheld in *CTS Corp.* The Council of the Corporation Section of the Delaware State Bar Association (the "Council") began studying the merits of such a statute in April, 1987. The Delaware Takeover Statute: A Report to the Delaware General Assembly (the "Report"), Exhibit 10 in Appendix to Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction, D.I. 9A at 5. A discussion draft was distributed the following May but the Council voted unanimously not to propose the takeover legislation to the General Assembly at that time. *Id.* It was felt that not only would a statute similar to that upheld in *CTS Corp.* not protect stockholders against certain hostile takeovers but it could also make it

easier for a company to be put into play to be sold. *Id.*

An alternative draft statute was circulated by the Council on November 11, 1987. *Id.* After receiving numerous comments on the proposed draft, the Council modified the proposed statute in order to address some of the concerns raised by the comments which went to the issues of providing protection to stockholders in unfair takeovers and yet not limit the ability of a potential acquirer to make, and the shareholders to receive, a fair and fully priced bid. *Id.* at 6. The Council approved the draft of Section 203 on December 22, 1987, and the Corporation Law Section of the State Bar Association approved it on January 4, 1988. *Id.* at 6. It was then approved by the Executive Committee of the State Bar Association and recommended to the Delaware General Assembly. *Id.* The General Assembly House and Senate Judiciary Committees held a joint hearing on January 20 and 21, 1988, to consider the proposed Business Combination Statute. Affidavit of Michael Houghton, D.I. 15 at 2 (the "Houghton Affidavit"). The Committees heard approximately ten hours of live testimony from thirty witnesses. *Id.* The House of Representatives of the Delaware General Assembly approved the bill on January 26, 1988, and the Senate approved it on January 28, 1988. Governor Michael N. Castle signed the legislation into law on February 2, 1988.

### SECTION 203: "BUSINESS COMBINATIONS WITH INTERESTED SHAREHOLDERS"

The basic function of Section 203 is to prevent a business combination between a Delaware corporation and an interested shareholder for three years unless certain alternative requirements delineated in the statute are satisfied.[1] 8 Del.C. § 203(a). The statute defines an interested shareholder as any person who owns 15% or more of the outstanding voting stock of the corporation. The statutory definition of the terms "own", "owned" or "owner" in-

cludes a person who, either individually or with or through any affiliate or associate, (i) either directly or indirectly owns the stock; (ii) has the right to acquire the stock; or (iii) has an agreement for the purpose of acquiring, holding, voting or disposing of the stock with another person who beneficially owns, or whose associates or affiliates beneficially own, the stock. 8 Del.C. § 203(c)(8). Section 203 explicitly excludes from its definition of interested stockholder a person who owned 15% of a corporation's stock prior to December 23, 1987, a stockholder who acquires enough shares to become an interested stockholder through a tender offer commenced prior to December 23, 1987, or a person who would become an interested shareholder pursuant to an exchange offer announced prior to December 23, 1987, and commenced within ninety days of that date. 8 Del.C. § 203(c)(5).

A business combination with the interested shareholder is defined to include any merger or consolidation between the corporation, or its majority owned subsidiary, and the interested shareholder. 8 Del.C. § 203(c)(3)(i). It also includes any business combination between the corporation and any other corporation if the merger or consolidation is caused by the interested shareholder and, if, as a result, Section 203's prohibitions as to a business combination with an interested shareholder would not be applicable to the surviving corporation. *Id.* The definition also includes any sale, lease, pledge, mortgage, exchange, transfer or other disposition to or with the interested shareholder of the company's assets having a market value equal to or greater than 10% of the aggregate market value of the assets of the company or of all the outstanding stock of the corporation. 8 Del.C. § 203(c)(3)(ii). Under this provision, however, the acquired corporation is free to dispose of the assets to a third-party after the interested shareholder gains control so long as the dividends or liquidation proceeds are distributed to all the shareholders on a pro rata basis. *Id.*

---

1. For purposes of this Opinion, only the statutory provisions applicable to the facts before the Court are addressed.

Section 203 exempts business combinations between the corporation and the interested shareholder from the three year moratorium if any one of three statutory requirements are met. The three year prohibition is inapplicable if, before the stockholder becomes an interested stockholder, the board of directors of the corporation approves either the business combination or the transaction which results in the stockholder becoming an interested stockholder. 8 Del.C. § 203(a)(1). Secondly, the statute exempts business combinations between the corporation and the interested shareholder if, during the same transaction, the stockholder both purchases enough stock to become an interested shareholder and acquires 85% of the voting stock outstanding at the time he commenced the transaction. 8 Del.C. § 203(a)(2). For the purpose of determining the number of shares outstanding, the statute excludes shares owned (i) by persons who are inside directors; and (ii) employee stock plans in which the participants do not have the right to vote in confidence as to whether or not the plan should tender its shares. *Id.* Thirdly, on or after the date the stockholder achieves the status of an interested stockholder, he may exempt himself from the statutory prohibition if he receives the approval of the corporation's board of directors for the proposed business combination and if 66⅔% of the outstanding voting stock, excluding the voting stock owned by the interested stockholder, affirmatively votes to authorize the business combination at an annual or special meeting of the stockholders. 8 Del.C. § 203(a)(3).

Although the Business Combination Statute provides certain procedures to avoid its three year moratorium on specific business combinations, the statute need not apply to every Delaware corporation. By its own terms, Section 203 is an "opt-out" statute. It applies to every major corporation incorporated in Delaware,[2] unless specific action is taken not to be governed by the statute. When an original certificate of incorporation is filed in Delaware, the incorporators may elect not to be governed by Section 203 by expressly stating so in the certificate of incorporation. 8 Del.C. § 203(b)(1). In addition, the stockholders of a corporation, through the affirmative vote of a majority of the shares entitled to vote and any other vote required by law, may elect to opt-out from Section 203's reach by amending the corporation's by-laws or certificate of incorporation. 8 Del.C. § 203(b)(3). If the stockholders so choose, the amendment does not become effective until twelve months after such adoption and it will not apply to any business combination between the corporation and any party who was an interested shareholder on or before the adoption of the amendment. *Id.* Any amendment to the by-laws adopted pursuant to this subdivision may not be further amended by the board of directors. *Id.* Lastly and most important to the resolution of the motion for preliminary injunction, Section 203 provides for a limited exemption to the statute. Within ninety days of Section 203's effective date, the board of directors of any corporation may amend its by-laws and expressly elect not to be governed by the Business Combination Statute.

Obviously, there is much more to the statute but those provisions are not pertinent for resolving the motion for preliminary injunction and, therefore, need not be discussed.

### THE PARTIES' ARGUMENTS

Plaintiffs allege in their motion for a preliminary injunction three bases for finding the Business Combination Statute unconstitutional: (1) it violates Article VI, Clause 2 of the United States Constitution (the "Supremacy Clause") because it is preempted by the Williams Act, 15 U.S.C.

---

**2.** Section 203 does not apply to corporations that do not have a class of voting stock that is: (i) listed on a national securities exchange, (ii) authorized for quotation on an inter dealer quotation system of a registered national securities association or (iii) held of record by more than 2,000 stockholders, unless any of the foregoing results from action taken, directly or indirectly, by an interested stockholder or from a transaction in which a person becomes an interested stockholder. 8 Del.C. § 203(b)(4).

§§ 78m(d)–(e) and 78n(d)–(f); (2) it violates Article I, Section 8, Clause 3 of the United States Constitution (the "Commerce Clause"); and (3) the retroactive provision violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment. As a consequence, Black & Decker contends it is now suffering and will continue to suffer irreparable harm if the injunction does not issue. It argues that the Business Combination Statute stands as a major roadblock to the business combination, which is the very purpose of the tender offer. Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction ("Plaintiffs' Memorandum of Law"), D.I. 9 at 51. The three year delay for business combinations under Section 203 also causes irreparable harm to Black & Decker because its financing may be "called" if a merger is not consummated within one hundred eighty days of completion of the tender offer. *Id.* at 52. Finally, Plaintiffs argue that the question about the constitutionality of Section 203 is causing confusion in the market place and may cause Black & Decker's tender offer to fail. Plaintiffs' Reply Brief, D.I. 23 at 29. Considering the disposition of the motion, it is not necessary to discuss Plaintiffs' contentions relevant to preemption, the Commerce Clause and retroactivity.

The Defendants first argue that the preliminary injunction should not be granted because the Plaintiffs have no standing and because the Plaintiffs have failed to show that they will suffer irreparable harm.[3] Answering Brief of Defendants Charles M. Oberly, III and Michael E. Harkins, ("Oberly & Harkins Brief"), D.I. 16 at 23; Brief of American Standard Inc. in Opposition ("American Standard Brief"), D.I. 17 at 19. The Defendants point out that the tender offer is conditioned upon receiving a majority of American Standard's outstanding voting stock and Black & Decker's financing is also structured in such a way that it must purchase a majority of the shares in order to obtain the funding it needs. Ober-

ly & Harkins Brief, D.I. 16 at 26; American Standard Brief, D.I. 17 at 19–20. Consequently, the Defendants argue that the Business Combination Statute poses no threat to Black & Decker since it would be able to opt out from the statute upon completion of its tender offer. Oberly & Harkins Brief, D.I. 16 at 19; American Standard Brief, D.I. 17 at 20. The Defendants then argue that since there is no injury, or at the very least since the alleged injury is speculative, there is no case or controversy and the Plaintiffs lack standing. Oberly & Harkins Brief, D.I. 16 at 24–25; American Standard Brief, D.I. 17 at 21–24. American Standard further argues that since the Plaintiffs solely control the contingent events, the Plaintiffs' constitutional challenge is not ripe. American Standard Brief, D.I. 17 at 25. The Defendants also contend that because Black & Decker will be able to opt out of Section 203 if the self-imposed condition of the tender offer is satisfied, the Plaintiffs have failed to show irreparable harm. Oberly & Harkins Brief, D.I. 16 at 26; American Standard Brief, D.I. 17 at 26. Furthermore, because Black & Decker will not be harmed, the Court is actually being asked to assist the Plaintiffs in the market place by rendering an advisory opinion, which it should decline to do. Oberly & Harkins Brief, D.I. 16 at 27; American Standard Brief, D.I. 17 at 29.

Defendants' other arguments about the Williams Act, the Commerce Clause and retroactivity are superfluous considering the Court's disposition of the motion for preliminary injunction and, therefore, will not be discussed.

In response to the question as to whether Black & Decker has standing or whether its constitutional claim is ripe, the Plaintiffs insist the answer must be in the affirmative. The Plaintiffs contend that they have satisfied the case or controversy requirement. Section 203 applies to Black & Decker today. Plaintiffs' Reply Brief, D.I. 23 at 5. Furthermore, the Business Combi-

---

**3.** For purposes of expediency, where the arguments of Oberly and Harkins and American Standard are substantively similar, the Court will consider them together as arguments by the Defendants. When either party adds an additional argument, its position will also be set forth in the discussion.

nation Statute is presently causing the Plaintiffs injury because of the confusion it causes in the market place. *Id.* at 6. Plaintiffs are also being required to expend funds without knowing whether "there exists a valid and possibly insurmountable roadblock to the second-step merger contemplated by the Plaintiffs' Congressionally-sanctioned Tender Offer." *Id.* at 9. Consequently, Black & Decker argues it has standing. Finally, because the Business Combination Statute is causing these alleged injuries, the Plaintiffs contend that the issues raised in their complaint are ripe for adjudication. *Id.* at 10.

## CASE OR CONTROVERSY—STANDING

Article III, Section 2 of the United States Constitution limits the judicial power of the federal courts by providing that the court's jurisdiction shall be confined to actual "cases" or "controversies." The Supreme Court has explained the Article III requirement as a limitation on the proper role of the federal courts. "[T]he 'case or controversy' requirement defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded." *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed. 2d 556 (1984).

■ The Article III requirement is, therefore, a "threshold" requirement to invoking the jurisdiction of the federal courts. *Los Angeles v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983). *See also Matter of President's Com'n on Organized Crime,* 783 F.2d 370, 373 (3d Cir.1986) (court's responsibility to determine whether a case or controversy exists is a threshold matter which cannot be waived). In order for a court to legitimately exercise its "power to declare the rights of individuals and to measure the authority of governments", it must be faced with a "real, earnest and vital controversy." *Valley Forge College v. Ameri-*

*cans United,* 454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (quoting *Chicago, etc., Railway Co. v. Wellman,* 143 U.S. 339, 345, 12 S.Ct. 400, 402, 36 L.Ed. 176 (1892)). A justiciable controversy is one that is "definite and concrete" not "hypothetical or abstract." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937) (citations omitted). Because Article III confines the judicial power to actual cases or controversies which are susceptible to specific, conclusive relief, courts have historically eschewed rendering advisory opinions on what the law would be based upon a hypothetical set of facts. *Id. Accord, Federal Kemper Ins. Co. v. Rauscher,* 807 F.2d 345, 350 (3d Cir.1986).

■ Turning to the facts of the case before the Court, it is clear that a dispute exists between the parties in an adversarial context. The controversy is one which is real and concrete because it involves a challenge to the constitutionality of Section 203 which is presently affecting all of the parties to this action. Whether or not Section 203 is constitutional will have a direct, immediate impact upon the actions of Black & Decker. Defendants' argument that Plaintiffs have not met the case or controversy requirement of Article III is unpersuasive. Defendants argue that Plaintiffs will be able to avoid Section 203 by opting out of the statute, which is, after all, a precondition to the consummation of their tender offer. Oberly & Harkins Brief, D.I. 16 at 26; American Standard Brief, D.I. 17 at 21. Under those circumstances, Section 203 can have no effect whatsoever on Plaintiffs' actions; therefore, there is no justiciable controversy.[4] The Delaware statute is presently affecting Plaintiffs, notwithstanding the fact that they may be able to opt out of Section 203. Indeed, were Black & Decker to achieve a majority of American Standard shares and opt out of Section 203, it would be pursuant to the statute's

---

4. Defendants' arguments as to why Plaintiffs lack standing are essentially similar to the arguments made as to why there is no present case or controversy ripe for adjudication. The Court finds these arguments equally unpersuasive.

The fact that Plaintiffs may avoid the statute by opting out, pursuant to Section 203(b)(2) of the Act, does not mean that Plaintiffs are not presently suffering an "injury" for purposes of standing. *See* discussion *infra.*

**1190**

authority. 8 Del.C. § 203(b)(2). The dispute concerning the constitutionality of Section 203 is far from "abstract" or "hypothetical"; the statute is presently in effect and all of its provisions are operative. Therefore, because the Court is faced with an actual controversy admitting of specific relief, the issue of the constitutionality of Section 203 is ripe for adjudication. *Federal Kemper Ins. Co.*, 807 F.2d at 350 (basic justiciability requirement of a case or controversy is an action which by its nature is concrete and ripe).

The Article III requirement that the federal courts only adjudicate actual "cases" or "controversies" has engendered numerous doctrines which elaborate and further define that requirement. *Allen*, 468 U.S. at 750, 104 S.Ct. at 3324. The doctrines of mootness, ripeness and political question all express the concept that there are constitutional and prudential limits on the judicial power in our democratic government. *Id.* The doctrine of standing has been recognized by the Supreme Court as "perhaps the most important" of these case or controversy doctrines because it involves the question of whether a litigant is entitled to have a court decide the merits of his dispute. *Allen*, 468 U.S. at 750, 104 S.Ct. at 3324 (citing *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975).

■ While the concept of standing derives both from constitutional as well as from prudential considerations, such as the general prohibition that a litigant not raise another person's legal rights, the "core component" of the standing requirement can be traced directly to the Constitution. "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision.'" *Valley Forge*, 454 U.S. at 472, 102 S.Ct. at 758 (citations omitted). *See also, Allen*, 468 U.S. at 751, 104 S.Ct. at 3324; *Federal Kemper Ins. Co.*, 807 F.2d

at 351; *N.J. Speech–Language–Hearing v. Prudential Ins. Co.*, 724 F.2d 383, 385 (3d Cir.1983). Therefore, in order to have standing, there must not only be an actual or threatened injury but also the litigant must personally be affected by the allegedly illegal conduct of the defendant.

While the requirements for standing to sue in federal court are well established, it is not always clear how they are to be applied to a particular case. *N.J. Speech*, 724 F.2d at 384. Applying the requisites for standing to the facts of this case, it is clear that Plaintiffs have satisfied each of the requirements of standing to sue.

■ Section 203 is presently affecting the Plaintiffs who are able to demonstrate a "personal stake in the outcome." *Los Angeles*, 461 U.S. at 101, 103 S.Ct. at 1665. *See also O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974) (personal stake in the outcome necessary to assure that concrete adverseness which sharpens the presentation of issues). Plaintiffs have shown that the injury they are suffering or will suffer is both "real and immediate" and not "conjectural" or "hypothetical." *Id. Accord, O'Shea*, 414 U.S. at 493–94, 94 S.Ct. at 675. The actual or threatened "injury" from which Plaintiffs suffer is that Plaintiffs are subject to the requirements of an allegedly unconstitutional statute. Moreover, the "injury" of which Plaintiffs complain, the applicability of an unconstitutional statute, "is likely to be redressed by a favorable decision." *Valley Forge*, 454 U.S. at 472, 102 S.Ct. at 758.

While it is entirely possible, as Defendants argue, that Plaintiffs will be able to achieve the necessary majority of American Standard shares to avoid the requirements of Section 203, they must still go through the procedures of opting out of the statute. "[T]he offer is now conditioned upon, among other things, the Purchaser being satisfied in its sole discretion that upon the purchase of shares pursuant to the offer, the Purchaser will be able to cause the company to elect expressly not to be governed by the Delaware Legislation...." Supplemental Offer to Purchase, Exhibit 1

to Plaintiffs' Reply Brief, D.I. 23. For purposes of standing, the requisite injury lies in the fact that Plaintiffs are being or will be forced to comply with a statute they claim is unconstitutional. In light of Section 203's present and immediate effect upon the Plaintiffs' actions, the Court finds that Plaintiffs have standing to challenge the Business Combination Statute.[5]

### PRELIMINARY INJUNCTION—IRREPARABLE HARM

The standards for granting or denying a motion for a preliminary injunction are well established. A preliminary injunction is not granted as a matter of right. *Norfolk Southern Corp. v. Oberly*, 594 F.Supp. 514, 519 (D.Del.1984), citing *Eli Lilly and Co. v. Premo Pharmaceutical Labs.*, 630 F.2d 120, 136 (3d Cir.), *cert. denied*, 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980). It is an extraordinary remedy and must be sparingly granted. *Norfolk Southern Corp.*, 594 F.2d at 514, citing *Dorfmann v. Boozer*, 414 F.2d 1168 (D.C.Cir.1969); *Wyrough & Loser, Inc. v. Pelmor Laboratories, Inc.*, 376 F.2d 543, 547 (3d Cir.1967). In order to obtain a preliminary injunction, the moving party must show "(1) a reasonable probability of eventual success in the litigation, and (2) that irreparable injury will ensue if relief is not granted. In addition, the court may consider (3) the possibility of harm to other interested persons from the grant or denial of relief, and (4) the public interest." *Kennecott Corp. v. Smith*, 637 F.2d 181, 187 (3d Cir.1980), citing *Constructors Ass'n of Western Pennsylvania v. Kreps*, 573 F.2d 811, 815 (3d Cir.1978); *Delaware River Port Auth. v. Transamerican Trail. Tr., Inc.*, 501 F.2d 917, 919–20 (3d Cir.1974). Merely establishing a risk of irreparable harm is not enough. *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987). Rather, the moving party has the burden of

proving a "clear showing of immediate irreparable injury." *Id.*, quoting *Continental Group, Inc. v. Amoco Chem. Corp.*, 614 F.2d 351, 359 (3d Cir.1980); *see also Sherman v. Posner*, 266 F.Supp. 871, 873 (S.D.N.Y.1966) (moving party has a "heavy burden of proof" of establishing the necessary elements for a preliminary injunction by "clear and convincing proof").

In support of its argument to show irreparable injury, Black & Decker contends that Section 203 stands as a major roadblock to the merger, the second step after the tender offer. If Section 203 applies, then the statute's three year delay on business combinations effectively bars the primary purpose of their tender offer and all of its expended efforts and resources would have been wasted. More calamitous, they contend that their financing would be called due and payable.

A close look at the facts, however, indicates the statute may have no practical effects on either Black & Decker's status under the statute or its intended merger. To start with, it was Black & Decker that conditioned the tender offer on obtaining a majority of American Standard's stock. As a matter of fact, Plaintiffs' financing is conditioned upon it getting a majority of the stock tendered. If a majority of stock can be taken down, Black & Decker can control the board of directors and by resolution opt out of Section 203. If it opts out of the statute, the three year ban on business combinations would not apply and a merger could be attained.[6] Applying this to the Plaintiffs' argument on irreparable harm, it is obvious that with or without Section 203, Plaintiffs' position would be exactly the same. If the statute indeed has a foreboding presence, as Black & Decker presently contends, meeting its own conditions, that is, getting a majority of the shares, effectively negates the statute's

---

**5.** Having found that Plaintiffs' complaint has presented a case or controversy for which they have standing to sue, it does not necessarily follow that Plaintiffs have presented an adequate showing of irreparable harm. *Los Angeles*, 461 U.S. at 103, 103 S.Ct. at 1665. *See* discussion *infra.*

**6.** At oral argument, counsel for Plaintiffs conceded that if a majority of stock is tendered, Plaintiffs could effectively opt out. Reference to the option was even included in its tender offer. Transcript ("Tr."), D.I. 34 at 27.

presence. On the other hand, without the statute having been enacted, Plaintiffs would have to get a majority of the shares (its financing requires that) and then, with control of the board, can work towards effecting the merger. Under these circumstances, the provisions of Section 203 play no part in the suggested irreparable harm of preventing the merger.

■ Plaintiffs are left, therefore, with their argument that Section 203's presence affects its ability to complete the tender offer because American Standard shareholders are confused about the statute's constitutionality and are unsure as to whether to tender their shares.[7]

To support its position on irreparable harm because of the confusion in the market place, Black & Decker submitted the affidavit by Daniel H. Burch. Affidavit in Support of Motion for Preliminary Injunction. D.I. 22 (the "Burch Affidavit"). Plaintiffs contend that the affidavit supports their position that the presence of Section 203 creates such uncertainty that the Plaintiffs may not obtain the necessary percentage of shares. Plaintiffs' Reply Brief, D.I. 23 at 31.[8]

This Court finds the Burch Affidavit unpersuasive for several reasons. First, the affidavit is unduly speculative and woefully inadequate. In his affidavit, Mr. Burch states "without equivocation that there is considerable uncertainty in the market at this time attributable in substantial part to the issue of the constitutionality of [Section 203] and the Statute's potential applications to the Tender Offer." Burch Affidavit, D.I. 22, ¶ 6. Although willing to assert that there is uncertainty in the market place, Mr. Burch fails to explain how the presence of the statute causes the uncertainty. Indeed, the most definitive statement Mr. Burch is willing to make is that "no one can predict whether or not American Standard shareholders will tender any of their shares" as a result of the uncertainty in the market. Burch Affidavit, D.I. 22, ¶ 6. The best that can be said is that "it is highly likely that unless [the] uncertainty is resolved, Black & Decker may not obtain the necessary percentage of shares of American Standard it must have in order to avoid the numerous obstacles posed by [Section 203]." Burch Affidavit, D.I. 22, ¶ 10. Without explaining how the statute creates the uncertainty, this Court is not convinced that the alleged irreparable injury will be corrected only through a preliminary injunction. Furthermore, by his own statement, Section 203 "contributes" to the uncertainty. It is not the sole cause. Indeed, Mr. Burch states that the presence of the poison pill "adds considerable uncertainty to that already existing in the market." Burch Affidavit, D.I. 22, ¶ 8. Thus,

**7.** At the hearing on this motion, the Court asked whether the irreparable harm alleged by Black & Decker is the chilling effect caused by Section 203. Tr. D.I. 34 at 86. In response, counsel for Black & Decker stated, "Primarily that and the fact that we're forced into going forward into the unknown. Primarily, yes, Your Honor, at this point I will agree that it is the chilling effect as particularly delineated in the Burch Affidavit; yes sir." *Id.* at 86–87.

**8.** Black & Decker takes the opportunity in the Burch Affidavit and in its Reply Brief to assert that the presence of the poison pill adds to the uncertainty in the market place. The Court finds that the presence of the poison pill does not affect the analysis of whether Section 203 causes irreparable harm.

Counsel for Black & Decker, furthermore, suggested that the poison pill has the "very real ability to stretch the whole process out and take us beyond the ninety day window period...." Tr., D.I. 34 at 31. Counsel suggested that the tender offer could extend beyond the ninety day window because "repeated amendments can carry an offer beyond the sixty day period." *Id.* at 84. This contradicts the position taken earlier that the "tender offer ... expires next Wednesday, February 24, 1988. At that time, B & D Acquisition either must accept the tendered shares for payment or terminate the tender offer and promptly then must return any tendered shares." *Id.* at 10. The Court was not given a definitive statement on whether the tender offer would be extended. Furthermore, Black & Decker asks this Court to assume the validity of the poison pill when, in fact, this very issue is presently being litigated. Finally, if the poison pill is valid, Black & Decker still controls the timing of the tender offer. Thus, the Court was asked to speculate as to whether Black & Decker's tender offer would fall outside the ninety day opt-out window. This does not prove irreparable harm. A speculative showing of the risk of irreparable harm is not enough. *ECRI,* 809 F.2d at 226.

it has not been shown that if a preliminary injunction were granted, other aspects of the tender offer contributing to the overall uncertainty would also cause American Standard shareholders not to tender the needed majority.[9]

Furthermore, the foundation for Mr. Burch's conclusion was not clearly established. Mr. Burch bases his conclusion upon "inquiries from market professionals and American Standard's" stockholders as well as his experience. Burch Affidavit, D.I. 22, ¶ 5. The affidavit, however, fails to disclose the number of inquiries received, the number of shares represented by the inquiries, the questions posed by the market professionals or the shareholders, the substance of the answers given and, most critically, whether the inquiries occurred before or after the Supplemental Offer to Purchase. Affidavit of Richard B. Nye, D.I. 32, ¶ 4 (the "Nye Affidavit"). Without knowing the factual predicate upon which Mr. Burch bases his conclusion, this Court must find that his conclusions are not persuasive.

Furthermore, the value of the Burch Affidavit was further called into question by the affidavit of Richard B. Nye which was submitted on behalf of American Standard. The Nye Affidavit reveals that Mr. Burch's assertions are in conflict with the economic realities surrounding Black & Decker's tender offer. Mr. Nye states that,

[T]he New York Stock Exchange closing price of American Standard stock on February 16 was $67.375 per share, or $2.375 over the price now being offered by Black & Decker. Any "considerable difficulty" that American Standard shareholders are now experiencing over whether or not to tender is, in my opinion, a function of the fact that tendering will yield less to shareholders than a sale of the stock in the open market. If Black & Decker fails to receive a majority of the shares, as Mr. Burch fears "may" happen, this price differential is in my view likely to be the cause, rather than unfounded fears over the validity of

a statute that does not even affect the tender offer process.

Nye Affidavit, D.I. 32, ¶ 3. The Court finds the common sense reasoning of the Nye affidavit persuasive. It has taken great steps toward refuting the assertions made in the Burch affidavit. At the very least, the Defendants have presented conflicting, credible expert opinion on the question of confusion in the market place. Even if the Court were to consider the evidence in a state of equipoise, which it is not, the Plaintiffs have failed to carry their burden of proving a clear showing of confusion amongst American Standard stockholders based on the uncertainty of Section 203's constitutionality. (Apart from this, however, a plain reading of Plaintiffs' tender offer demonstrates that if Plaintiffs' conditions are met, it can opt out of the effects of Section 203.)

Based upon the foregoing, this Court must conclude that the Plaintiff's have failed to prove that irreparable injury will ensue if relief is not granted.

■ Once a movant fails to prove irreparable harm, the Court need not reach the question of probability of success on the merits. *Commonwealth of Pa. ex rel. Creamer v. U.S. Dept. of Agr.*, 469 F.2d 1387, 1388 (3d Cir.1972) ("A finding of no irreparable harm is itself sufficient to uphold the district court's denial of a preliminary injunction as a proper exercise of discretion.") *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir.1987) ("Once a court determines that the movant has failed to show irreparable harm absent an injunction, the inquiry is finished and the denial of the injunctive request is warranted."); *Norfolk Southern Corp. v. Oberly*, 594 F.Supp. at 523 (The Court did not reach the question of probability of success on the merits in deference to an applicable case pending before the Delaware Supreme Court); *FMC Corp. v. R.P. Scherer Corp.*, 545 F.Supp. 318 (D.Del.1982) (Upon a finding of no irreparable harm, the court de-

9. As the Nye Affidavit points out, if the poison pill also causes uncertainty, as Mr. Burch asserts, "it calls into question his conclusion that the resolution of a constitutional challenge to Section 203 will remove the uncertainty in the marketplace." Nye Affidavit, D.I. 32, ¶ 5.

**1194**

nied the preliminary injunction without addressing the question of probability of success on the merits.)

The importance of the statute, the din of the battle and the restive shuffling of the market are temptations to resolve all the difficulties between these corporations in their two billion dollar battle. Yet, it is not the unnecessary expenditure of resources that counsels restraint because the issues have been fully briefed and argued well. Rather, it is simply that such a gratuitous discussion of the constitutionality of Section 203 could be used to upset the balance between the parties in the quest for their respective positions.[10] To do more under these circumstances would amount to issuing an advisory opinion. This should not be done. *See, e.g., FMC Corp.,* 545 F.Supp. at 323; *FMC Corp. v. R.P. Scherer Corp.,* C.A. No. 6889, Longobardi, V.C. (Del.Ch. Aug. 6, 1982) [Available on WESTLAW, 1982 WL 8769].

For these reasons, this Court declines to reach the question of probability of success on the merits. Black & Decker has failed to prove by a clear showing that it will suffer irreparable injury if the preliminary injunction were not granted. This is enough to deny Black & Decker's motion for a preliminary injunction.

---

**10.** For American Standard, this Court will not be Arthur in order to dispatch what it considers to be Braggadocchio nor will this Court be Black & Decker's Calidore in order to capture what it perceives to be the Blatant Beast. Spenser, *The Faerie Queene.*