**SWT ACQUISITION CORP., A Delaware corporation, Plaintiff,**

v.

**TW SERVICES, INC., a Delaware corporation,**

and

**Charles W. Oberly, III, Attorney General of the State of Delaware,**

and

**Michael E. Harkins, Secretary of State of the State of Delaware, Defendants.**

**Civ. A. No. 88–602 MMS.**

United States District Court, D. Delaware.

Nov. 22, 1988.

1324

Steven D. Goldberg, of Theisen, Lank, Mulford and Goldberg, P.A., Wilmington, Del.; of counsel: Richard F. Ziegler, Lawrence B. Friedman, Andrew Weissmann, and Philipp H. Windemuth, of Cleary, Gottlieb, Steen & Hamilton, New York City, for plaintiff.

R. Franklin Balotti, Gregory Williams, and Joseph J. Bodnar, of Richards, Layton & Finger, Wilmington, Del.; of counsel: John L. Warden, Norman Feit, Esq., John L. Hardiman, and Mark van Dyke Holmes, of Sullivan & Cromwell, New York City, for defendant TW Services, Inc.

Grover C. Brown, and Edward M. McNally, of Morris, James, Hitchens & Williams, Wilmington, Del., for defendants Oberly and Harkins.

MURRAY M. SCHWARTZ, Chief Judge.

OPINION

This opinion resolves a motion to dismiss arising out of a hostile tender offer for TW Services, Inc. ("TW"), initiated by SWT Acquisition Corp. ("SWT"). The issue raised by the motion to dismiss filed by TW is whether the complaint filed by SWT seek-

1. The merits of whether § 203(a)(3) is constitutional as applied is not addressed.

2. Under § 203(c)(5) interested stockholder is defined in pertinent part as:

(5) 'interested stockholder' means any person (other than the corporation and any direct or indirect majority-owned subsidiary of the corporation) that (i) is the owner of 15% or more of the outstanding voting stock of the corporation, or (ii) is an affiliate or associate of the corporation and was the owner of 15% or more of the outstanding voting stock of the corporation at any time within the 3-year period immediately prior to the date on which it is sought to be determined whether such person is an interested stockholder; and the affiliates and associates of such person....

3. Subsection (a) of Section 203 in its entirety provides:

ing a declaration that 8 Del.C. § 203(a)(3) ("Section 203(a)(3)" or "§ 203(a)(3)") of the General Corporation Law of the State of Delaware is unconstitutional as applied is a justiciable case or controversy.[1] For reasons stated below the complaint will be dismissed.

*Background*

A. *Procedural Background*

This action was commenced on October 27, 1988 by plaintiff SWT against defendants TW, Charles M. Oberly, III, Attorney General of the State of Delaware, and Michael E. Harkins, Secretary of State of the State of Delaware. SWT's complaint seeks declaratory and injunctive relief predicated upon the alleged unconstitutionality of Section 203(a)(3) of the General Corporation Law of the State of Delaware.

SWT argues § 203(a)(3) is unconstitutional as applied to the extent it would require SWT to obtain approval of two-thirds of the TW common shares it does not then own or is not tendered to it ("Two–Thirds Residual Vote Requirement") as a pre-condition to effecting a merger or other business combination with TW before September 1991 (*i.e.,* three years from the date SWT became an "interested stockholder" of TW under § 203[2]).

The complaint alleges the Two–Thirds Residual Vote Requirement under § 203(a)(3)[3] is preempted by the Williams

(a) Notwithstanding any other provisions of this chapter, a corporation shall not engage in any business combination with any interested stockholder for a period of 3 years following the date that such stockholder became an interested stockholder, unless (1) prior to such date the board of directors of the corporation approved either the business combination or the transaction which resulted in the stockholder becoming an interested stockholder, or (2) upon consummation of the transaction which resulted in the stockholder becoming an interested stockholder, the interested stockholder owned at least 85% of the voting stock of the corporation outstanding at the time the transaction commenced, excluding for purposes of determining the number of shares outstanding those shares owned (i) by persons who are directors and also officers and (ii) employee stock plans in which employee participants do not have the right to

Act because it denies a meaningful opportunity for success in effecting a merger or other business combination to "interested stockholders" of Delaware corporations who make all shares tender offers. The complaint also alleges § 203(a)(3) is void under the Supremacy Clause and violates the Equal Protection Clause in the Fourteenth Amendment because it is not rationally related to any legitimate governmental purpose of the State of Delaware.

At a conference held on October 28, 1988, the Court granted SWT's application for expedited discovery of TW. The Court scheduled argument on TW's Motion to Dismiss for November 18, 1988, and argument, if necessary, on SWT's Motion for Summary Judgment, or in the Alternative, a Preliminary Injunction for November 23, 1988.

## B. *Factual Background*

### 1. The Parties

SWT and TW are both Delaware corporations. SWT was recently incorporated for the purpose of making an offer to acquire TW. SWT is a wholly-owned subsidiary of SWT Associates, L.P., a Delaware limited partnership ("SWT–LP"). SWT–LP is managed by Gollust, Tierney & Oliver ("GTO").

TW is involved in food and health care services, operating restaurants, vending and manual food facilities, concessions and other food operations, and retirement and nursing home facilities.[4]

Defendant Charles M. Oberly, III, is Attorney General of the State of Delaware. The Attorney General is charged with enforcing the laws of the state. Defendant Michael E. Harkins is Secretary of State of the State of Delaware. His department is ultimately responsible for accepting for filing those documents required to effect a merger or consolidation involving a Delaware corporation under Delaware law.

### 2. SWT Purchases

SWT owned 9,267,400 shares of TW, or approximately 19.1% of the total shares outstanding, before commencing its partial offer for TW shares. SWT acquired beneficial ownership of the TW stock in three stages. First, as of September 13, 1988, certain investment funds managed by GTO owned 64,000 shares of TW after purchasing TW shares in the ordinary course of business beginning in 1986. Second, on September 13, 1988, SWT–LP purchased from Mr. Ronald O. Perelman a 14.9% block of the outstanding shares of TW in a trade on the open market. The sum of the 14.9% block and the other 64,000 shares held as of September 13, 1988 produced beneficial ownership by SWT in TW stock exceeding 15% by approximately 9800 shares. Finally, between September 13, 1988 and September 23, 1988, SWT–LP purchased 1,971,500 additional shares of TW stock (approximately 4% of the total outstanding shares).[5]

### 3. SWT Proposal and Tender Offer

On September 23, 1988, SWT first attempted to interest TW in an acquisition. TW's chairman informed SWT on September 24 that TW would not consider an acquisition at that point. On October 6 SWT formally proposed a merger between SWT–LP and TW at a price of $28 per share to each TW stockholder. On October 12 TW issued a press release rejecting SWT's offer.

---

determine confidentially whether shares held subject to the plan will be tendered in a tender or exchange offer, or (3) *on or subsequent to such date the business combination is approved by the board of directors and authorized at an annual or special meeting of stockholders, and not by written consent, by the affirmative vote of at least 66–2/3 of the outstanding voting stock which is not owned by the interested stockholder.*
(emphasis supplied to alleged unconstitutional portion of § 203(a)).

**4.** The TW food service operations are conducted through Canteen Corporation, Spartan Food Systems, Inc. (Hardee's franchises), and DHI Corporation (El Pollo Loco and Denny's restaurants).

**5.** SWT publicly disclosed its position in a Schedule 13D filed with the Securities and Exchange Commission on September 23.

Its friendly overture having failed, SWT commenced a tender offer for 15,750,000 TW shares at $29 per share on October 28, 1988. Along with its existing holdings of 19.1%, the partial tender offer would provide SWT with a 51% stake in the outstanding common shares of TW. In addition, the Offer to Purchase proposed a second-step merger following consummation of the offer in which all remaining shares not then owned by SWT or its affiliates would be converted into the right to receive the same consideration paid in the first step of the offer.

The complaint alleges the Two–Thirds Residual Vote Requirement of § 203(a)(3) caused SWT to make a two-step offer rather than an all shares offer. According to SWT, § 203(a)(3) is the sole reason it chose a two-step offer.[6] Completion of the first step of the offer would provide SWT with 51% ownership of TW's outstanding shares and conceivably afford SWT a good chance of obtaining two-thirds approval of the remaining outstanding 49% shares as required by § 203(a)(3).

SWT's two-step offer is conditioned upon (1) the tender and purchase of the number of shares necessary for SWT to own at least a majority of TW's outstanding common shares; (2) TW's redemption of the Preferred Stock Purchase Rights or satisfaction by SWT that the rights are invalid or inapplicable to the offer and proposed second-step merger; (3) obtaining sufficient financing to enable SWT to purchase the shares being sought and consummate the proposed merger; (4) approval by TW's Board of Directors and the recommenda-

tion by the Board of the SWT offer to TW shareholders; and (5) execution of a satisfactory merger agreement.[7]

One of the conditions of the SWT two-step tender offer has already not been met. On November 9, 1988 the TW Board recommended to TW stockholders that they not tender their shares to SWT. The TW Board based its denial in part on the uncertainties involved in a second-step merger. Also, the TW Board considered the SWT offer inadequate from a financial point of view, not a bona fide offer, and questioned the sincerity of SWT in light of past acquisition proposals made by SWT principals.

### 4. Potential All Shares Tender Offer

SWT alleges it would have commenced an all shares tender offer but for the presence of the Two–Thirds Residual Vote Requirement of § 203(a)(3) (Affidavit of Augustus K. Oliver, Vice–President, Secretary and Assistant Treasurer of SWT, at 3) (discussing statements in SWT's Schedule 14D–1 indicating intent to make all shares tender offer if § 203(a)(3) declared unconstitutional). SWT has made provisions for financing such an all shares offer. The sources for the financing are funds from SWT–LP, subordinated bridge financing arranged by Donaldson, Lufkin & Jenrette Securities Corp., and senior debt financing from Citibank, N.A.

### DISCUSSION

■■■ As a threshold matter I must determine whether material beyond the com-

---

**6.** According to SWT, it was forced to commence a two-step tender offer because of the so-called dead shares phenomenon. If SWT commenced an all shares tender offer and the TW Board approved such an offer and all tendering shareholders proffered their shares to SWT, SWT would face the logistically impossible task of seeking two-thirds approval of non-tendering or dead shares. The so-called dead shares phenomenon reflects the notion that some portion of a corporation's stockholders will always be unreachable or either unwilling or unable to respond to corporate communication. *See* Affidavit of Hamilton E. James, at 2–3 (average response rate 92% and median response rate is 95%). Thus, SWT argues an all shares tender offer controlled by the Two–Thirds Residual

Vote Requirement found in § 203(a)(3) is not a viable option.

**7.** The financing arrangements also provide for a number of conditions. The availability of bank financing, for example, is conditioned upon (1) an opinion from an independent accounting or appraisal firm attesting to the solvency of the merged entity; (2) completion of a due diligence investigation by the leading institution; (3) receipt by lenders of a satisfactory environmental review report; (4) no adverse change in the overall business condition of SWT, TW or its subsidiaries; (5) satisfactory review of employee benefit plans; and (6) other customary conditions.

plaint may be considered in this motion to dismiss on grounds the dispute is not ripe. TW contends the Court is limited to the facts alleged in the complaint to determine whether or not it has jurisdiction unless factual disputes exist; however, since no factual disputes exist, consideration of extrinsic material is improper. TW contends that if this Court considers matters beyond the complaint, the motion to dismiss on ripeness grounds will be converted into a motion for summary judgment.

TW takes an overly restrictive view as to what a district court may consider in a 12(b)(1) motion.[8] One treatise states the following about material which may be considered by a district court in a 12(b)(1) motion:

> When a movant's purpose is to challenge the substance of the jurisdictional allegations, he may use affidavits and other matter to support his motion. Conversely, the pleader may establish the actual existence of subject matter jurisdiction through extra-pleading material, and, if persuasive, this will avoid a dismissal even if the complaint is defective.

C. Wright & A. Miller, *Federal Practice & Procedure* § 1350, 549–50 (1969 & Supp.). Similarly, the Supreme Court has stated that "... when a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion ... the court may inquire, by affidavits or otherwise, into the facts as they exist." *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947). Also, broad discretion is granted to the district court as to the mode of inquiry in a 12(b)(1) motion as there is no designated statutory procedure for such an inquiry under the Federal Rules. *Gibbs v. Buck,* 307 U.S. 66, 71–72, 59 S.Ct. 725, 728–29, 83 L.Ed. 1111 (1939).[9]

One court provides a helpful summary as to what a district court may consider in a 12(b)(1) motion.

> The district court ... has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) *the complaint supplemented by undisputed facts evidenced in the record;* or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) (emphasis added).

This Court may then consider the affidavits proffered by SWT and other information in the record.

### A. Section 203 [10]

The relevant portion of Section 203 under constitutional attack precludes an interested stockholder [11] for three years from merging or engaging in several other business combinations. Section 203(a) & 203(c)(3). SWT became an interested stockholder when it crossed the 15% threshold of ownership in TW outstanding voting stock. Under § 203(a)(3) the interested stockholder (*i.e.,* SWT) may not engage in a merger

---

**8.** One treatise is in accord with TW's contention. *Moore's Federal Practice* states: "[a] court is not restricted to the face of the pleadings, but may review any evidence such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction to hear the action." 2A J.W. Moore, *Moore's Federal Practice* ¶ 12.07[2.–1], at 12–45–46 (1987). However, other authorities stand for the broader proposition that a district court has the ability to look to material beyond the complaint even when a factual dispute does not exist.

**9.** Consideration of matters beyond the complaint in a 12(b)(1) motion does not convert the 12(b)(1) motion into a motion for summary judgment. *Land,* 330 U.S. at 735 n. 4, 67 S.Ct. at 1011 n. 4; *Moore's,* ¶ 12.07[2.–1] at 12–48.

When material beyond the complaint is considered, a 12(b)(6) motion for failure to state a claim is converted to a motion for summary judgment. Fed.R.Civ.P. 12(b)(6) and advisory committee's note for 1946 amendment to 12(b)(6).

**10.** For a more detailed discussion of § 203, *see BNS, Inc. v. Koppers Co., Inc.,* 683 F.Supp. 458 (D.Del.1988).

**11.** An interested stockholder is defined by the statute as one who acquires 15% or more of the outstanding voting stock of a company in a transaction not approved by that company's board of directors. Section 203(c)(5). *See supra* note 2.

or business combination for three years unless:

> (3) after the stockholder becomes interested the proposed business combination is approved by the company's board of directors *and* authorized at a meeting by two-thirds of the outstanding voting stock that is not owned by the interested stockholder.

Section 203(a)(3).[12]

SWT seeks a declaratory judgment or, in the alternative, injunctive relief on grounds that § 203(a)(3) is unconstitutional as applied to SWT, an "interested stockholder" under § 203.

### B. *Ripeness and Justiciability Standard*

A party seeking to invoke the jurisdiction and power of a federal court under Article III must present an actual case or controversy. *Allen v. Wright,* 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984); *O'Shea v. Littleton,* 414 U.S. 488, 493–94, 94 S.Ct. 669, 674–75, 38 L.Ed.2d 674 (1974); *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). A case or controversy appropriate for declaratory judgment resolution exists where "the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

A case or controversy is ripe when plaintiffs demonstrate they have " 'sustained or are in immediate danger of sustaining direct injury.' " *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (quoted in original). The injury must be " 'real and imme-

diate' " and not " 'conjectural or hypothetical.' " *Id.*[13] (quoted in original). Analysis of ripeness requires a careful factual inquiry and determinations under the ripeness test must be made on a case-by-case basis. *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 297–98, 99 S.Ct. 2301, 2308–09, 60 L.Ed.2d 895 (1979).

The ripeness doctrine ensures a court will not offer advisory opinions to parties. The bar against issuing advisory opinions is the "oldest and most consistent thread in the federal law of justiciability." *Flast v. Cohen,* 392 U.S. 83, 96, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968) (quoting C. Wright, *Federal Courts* 34 (1963)). Resolution of the inquiry into ripeness is especially strict when a constitutional issue is at hand, because "[a] fundamental and long-standing principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Northwest Indian Cemetery Protective Ass'n,* —— U.S. ——, 108 S.Ct. 1319, 1323, 99 L.Ed.2d 534 (1988); *see also West v. Atkins,* —— U.S. ——, 108 S.Ct. 2250, 2255 n. 8, 101 L.Ed.2d 40 (1988) (settled doctrine that courts avoid constitutional questions whenever possible); *Pringle v. Court of Common Pleas,* 778 F.2d 998, 1005 (3d Cir.1985) (same).

### C. *Parties' Contentions as to Ripeness and Justiciability*

Plaintiff SWT contends its suit is ripe. SWT argues the Two–Thirds Residual Vote Requirement impairs SWT's ability to commence an all shares offer for TW stock. Indeed, SWT argues it would launch an all shares tender offer for the outstanding voting stock of TW but for the presence of the Two–Thirds Residual Vote Requirement in § 203(a)(3). SWT alleges it was forced to

---

**12.** *See supra* note 3.

**13.** *See also Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). In *Aetna Life Insurance* the Supreme Court stated:

> A 'controversy' in this sense must be one that is appropriate for judicial determination.... A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one

that is academic or moot.... The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests.... It must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Id.* at 240–41, 57 S.Ct. at 464 (citations omitted).

launch a partial tender offer in order to increase the probability that it might acquire two-thirds of the residual shares. SWT asserts injury because the Two–Thirds Residual Vote Requirement of § 203(a)(3) dictated a partial two-step tender offer which it alleges has less chance of ultimate success then the all shares tender offer it would have preferred. In addition, SWT maintains the conditions attached to its tender offer do not detract from the immediacy and concreteness of its claims. Finally, SWT argues the fact it crossed the 15% ownership threshold in TW stock does not make this dispute less ripe, rather SWT's ownership stake makes the immediate declaratory action more ripe.

Defendants contend the dispute is not ripe. Defendants argue this Court should not render an opinion as to the constitutionality of § 203(a)(3) because SWT created the problem they now confront by knowingly and intentionally crossing the 15% ownership threshold in TW voting stock. Defendants also argue the constitutional question presented is speculative because: SWT has not made an all shares tender offer; the two-step tender offer and financing arrangements are conditional; the TW board is staggered thereby precluding SWT control for two years; and SWT may be able to satisfy the Two–Thirds Residual Vote Requirement after the first step of the two-step offer.

### D. The Dispute is Not Ripe

 The facts alleged in the complaint do not support a conclusion that this dispute is justiciable. After setting aside the rhetoric and clearing away the underlying brush, the pivotal question may be simply stated: whether there is present a case or controversy seeking a declaratory judgment that § 203(a)(3) is unconstitutional as

applied to an all shares hostile tender offer which has not been commenced?

SWT must take further steps in its pursuit of TW beyond merely stating it would like to make an all shares tender offer but. for the Two–Thirds Residual Vote Requirement of § 203(a)(3). A line of demarcation must be drawn to help determine when a federal court should properly involve itself in a takeover battle where the issue is the constitutionality of a state statute. I am of the opinion that an essential prerequisite is the commencement of a tender offer which goes to the heart of the merits of the challenge to the constitutionality of § 203(a)(3).

Some recent cases in this Court and other courts prove helpful to the analysis in the instant case. *Black & Decker Corp. v. American Standard, Inc.*, 679 F.Supp. 1183 (D.Del.1988), and *BNS v. Koppers Co., Inc.*, 683 F.Supp. 458 (D.Del.1988), cases on which SWT relies and where ripeness was found, are easily distinguishable. In both *Black & Decker* and *BNS*, tender offers had been commenced which could be adversely and directly affected by § 203 prior to the filing of complaints challenging the constitutionality of § 203. In contrast, SWT has not commenced the all shares tender offer it suggests § 203 unconstitutionally deters, rather it merely states it will launch the offer once the impediment of § 203 is removed. At present, SWT faces only abstract and hypothetical injury from § 203(a)(3). The "dead shares" problem posed by the Two–Thirds Residual Vote Requirement is not yet implicated in a concrete manner.[14]

Nothing in § 203 prevents SWT from commencing an all shares tender offer conditioned upon a finding that § 203(a)(3) is unconstitutional as applied to SWT. SWT has not taken this step; rather, SWT asks this Court to hypothesize as to what *might* happen *if* SWT commenced an all shares offer for TW's outstanding voting stock.[15]

**14.** *See supra* note 6 (describing dead shares phenomenon).

**15.** The instant case is analogous to other recent cases where courts have found events alleged to be too uncertain or contingent to be justiciable. *Brown v. Ferro Corp.*, 763 F.2d 798, 802–03 (6th

Cir.), *cert. denied,* 474 U.S. 947, 106 S.Ct. 344, 88 L.Ed.2d 291 (1985) (shareholder challenge to "golden parachute" agreements not ripe for decision where triggering event has not occurred); *Grand Metropolitan v. The Pillsbury Company*, No. 88–555 LON, slip op. at 7–8 (D.Del. Nov. 1, 1988) (where complaint sought declaration that

At bottom, SWT seeks an advisory opinion as to the constitutionality of § 203(a)(3) as it relates to an all shares tender offer not yet made. This runs counter to Article III jurisprudence. A case or controversy does not exist.[16]

An order will be entered granting TW's motion to dismiss.

statute of states apart from Delaware were unconstitutional and statutes not invoked as of yet, dispute not ripe because plaintiff merely asking court to remove "potential obstacles"); *see also Wilmac Corp. v. Bowen,* 811 F.2d 809, 813 (3d Cir.1987) ("[m]ere economic uncertainty affecting the plaintiff's planning is not sufficient to support premature review").

16. The fact that SWT has filed information with the Securities and Exchange Commission and this Court indicating it will commence an all shares offer if § 203 is found unconstitutional, it has adequate financing commitments to commence an all shares offer, and it has crossed the 15% ownership threshold all increase the ripeness of the dispute. However, the dispute remains abstract and hypothetical.