**NORTH AMERICAN PHILIPS CORPORATION, a Corporation of the State of Delaware, Plaintiff,**

**v.**

**AETNA CASUALTY AND SURETY COMPANY, et al., Defendants.**

**Civ. A. No. 88C–JA–155.**

Superior Court of Delaware,
New Castle County.

Submitted: Jan. 31, 1989.
Decided: Aug. 21, 1989.

Richard E. Poole, Richard L. Horwitz of Potter, Anderson & Corroon, and Jerold Oshinsky, Lorelie S. Masters, and Patricia A. Van Dyke of Anderson, Baker, Kill & Olick, Washington, D.C., for plaintiff.

Norman M. Monhait of Morris, Rosenthal, Monhait & Gross, P.A. and Christopher T. Lutz of Steptol & Johnson, Washington, D.C., for defendants American Reinsurance Co. and the Home Ins. Co.

Stephen P. Casarino of Tybout, Redfearn, Casarino & Pell, Wilmington, for Centennial Ins. Co.

Edmund D. Lyons of Aerenson, Ferrara & Lyons and Joseph K. Brenner of Wilmer, Cutler & Pickering, Washington, D.C., for defendants Cigna Property and Cas. Ins. Co. and Ins. Co. of North America.

John G. Mulford of Theisen, Lank, Mulford & Goldberg, P.A., Wilmington, for defendant Continental Cas. Co.

Richard K. Hermann of Bayard, Handelman & Mordoch, P.A., Wilmington, and Carol R. Finnochio of Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., for defendant Fireman's Fund Ins. Co.

Edward Kafader of Trzuskowski, Kipp, Kelleher & Pearce, P.A. and Stephen Jacobs and Kathleen L. Kuhn of Siff, Rosen & Parker, P.C., New York City, for defendant First State Ins. Co.

Elizabeth B. Sundza of Leboluf, Lamb, Leiby & Macrae, Washington, D.C., for defendants Nat. Cas. Co. and Prudential Reinsurance Co.

Brian C, Cary, Irene A. Sullivan, and Timothy Reynolds of Skadden, Arps, Slate, Meagher & Flom, New York City, for defendant North Star Reinsurance Corp.

Alfred M. Isaacs of Morris, James, Hitchens & Williams, Wilmington, for defendant Pacific Ins. Co.

MARTIN, Judge.

This is the Court's decision on various defendants' motions to dismiss on justiciability grounds. For the reasons set forth below these motions are denied.

This is a declaratory judgment action brought to determine the rights and obligations of North American Philips Corporation ("Philips") and 31 insurers alleged to have provided primary and excess liability coverage to Philips over a 36 year period. Philips is a Delaware corporation, organized in 1959, with its corporate headquarters located in New York. Philips is a major industrial company engaged, *inter alia,* in the manufacture of consumer products, lighting products, electric and electronic components, and professional equipment at locations throughout the United States. To protect its business activities over the years, Philips purchased primary and excess liability insurance from various insurance companies, including comprehensive general liability and environmental impairment liability insurance.[1]

The defendants in this action are 31 insurance companies that sold Philips general liability insurance from as early as April 30, 1953 through July 1, 1986. According to the complaint, defendants sold to Philips general liability policies up to the $50 million excess level for the named period.

The United States Environmental Protection Agency, and private third parties claim that Philips contaminated certain locations throughout the U.S. ("the sites"); by using or generating toxic chemicals. These parties have commenced actions against Philips based on alleged ground water, surface water and soil contamination at the sites (the "Environmental Actions"). Allegedly Philips spent more than $30 million in damages for the underlying Environmental Actions involving its TH Agriculture & Nutrition ("THAN") and American Color & Chemical ("ACC") Divisions. Allegedly, Philips expended sums in connection with the other Environmental Actions at issue. Philips projects that, over the next three years alone, it will spend millions of dollars in damages on the underlying Environmental Actions.

According to Philips, its general liability policies require defendants to investigate, defend, and indemnify it against a broad range of liability, including liability incurred in the Environmental Actions. Allegedly, defendants refused to honor in full their obligations to defend and indemnify Philips in connection with the Environmental Actions.

---

1. Philips notes that its insurance coverage for a given year typically consists of a comprehensive primary policy and numerous layers of excess policies to cover general liability and defense costs expended after the primary coverage is exhausted or, in certain circumstances, is reduced or does not apply to a given claim.

On January 26, 1988, Philips initiated this litigation: (1) to determine, in connection with the Environmental Actions against Philips, defendants' obligations and Philips' rights under the primary comprehensive and excess general liability and environmental liability insurance policies; and (2) to recover compensatory damages for breach of contract.

Defendants moved to dismiss the instant action in its entirety based on the doctrine of *forum non conveniens*. However, this motion was denied.

Some of the excess carrier defendants now move to dismiss plaintiff's claims against them because allegedly, at least as to their policies, this case is not ripe for adjudication.

The excess carriers allege that there is no actual controversy. They allege that the possibility of triggering the primary and excess coverage underlying their policies in any given policy year is remote. The excess carriers also allege that plaintiff has failed to meet its burden of showing that the exhaustion of the coverage underlying any of the their policies is reasonably likely to occur much less that it has already occurred. If the Court were to render a decision in this situation it would merely be an advisory opinion.

The excess carriers argue that in order for the plaintiff to receive a declaratory judgment there must be an actual controversy ripe for adjudication under the Delaware Declaratory Judgment Act.[2] Allegedly, plaintiff has failed to meet this burden. The excess carriers argue that the question of whether a case is ripe for declaratory judgment requires practical judgment and is now very much a matter of common sense.[3] Also, there must be in existence a factual situation giving rise to immediate, or about to become immediate, controversy between the parties.[4] However, the plaintiff has not offered proof that its potential liabilities in the environmental actions are ever likely to exhaust the policy limits underlying the excess carriers coverage levels in any particular policy year.

The excess carriers note that other Courts faced with a similar absence of information regarding underlying environmental claims have granted summary judgment in the excess carriers favor where the insured had not alleged that the underlying insurance coverage in each applicable policy year had been or would be exhausted by the underlying claims. The Court in *Borg–Warner Corp. v. Liberty Mutual Insurance Company*, No. 88539 (N.Y.Sup.Ct., August 26, 1988), which involved insurance coverage claims regarding underlying environmental claims, held that the complaint failed to allege facts from which it could be inferred that there is a "potential liability" exceeding the primary coverage. The Court stated that the complaint lacked specificity and the insured could not confirm its assertion that its liability may exceed the underlying coverage of the excess policies. Thus, the Court rejected it as purely speculative.[5]

The excess carriers argue in the alternative that even if the Court found the plaintiff's action to present a case in controversy with its high level excess carriers, the potential is so remote that when this Court exercises its discretion is should refuse to decide the claims against the excess carriers at this time. The excess carriers support this argument with the reasoning used in *Employers Insurance of Wausau v. McGraw–Edison Company*, No. K86–48 C.A., 1987 WL 58061, Gibson, J. (W.D.Mich. August 8, 1987). In *McGraw–Edison*, where the Court faced similar facts as here, the Court reasoned that;

> It would serve no useful purpose, and amount to nothing short of mere speculation, to assume that the excess insurers

**2.** *Rollins International, Incorporated v. International Hydronics,* Del.Supr., 303 A.2d 660, 662–663 (1973).

**3.** *Schick Incorporated v. Amalgamated Clothing and Textile Workers Union,* Del.Ch., 533 A.2d 1235, 1239 (1987).

**4.** *Ackerman v. Stemerman,* Del.Supr., 201 A.2d 173, 175 (1964).

**5.** *Id.* at 5.

whose policy limits are in excess of $20 million dollars in any one policy year will ever be called upon to provide coverage or indemnification. To make such a determination of legal obligations at this time when the pleadings allege no more than the slight possibility that coverage may be triggered at some time in the distant future, if at all, would be improper, given the facts and circumstances of this case. The harm of exposing the parties to the expense of litigation with only a remote possibility of their ever being called upon for indemnification out weighs any benefit to be derived from a consolidated action on the issues of coverage. In addition, given the large number of parties involved, retaining jurisdiction over parties who are not necessary to the controversy before the Court, would result in the inefficient use of precious judicial resources.[6]

The excess carriers argue that the possibility that they may be called upon to provide coverage with respect to any of the Environmental Actions is equally remote. Furthermore, requiring the excess carriers to remain in this action unjustly exposes them to the expense of litigation when only a remote possibility exists that they will ever be called upon to indemnify plaintiff for the environmental actions.

Plaintiff argues to the contrary that the dispute with the excess carriers presents a ripe controversy between the parties as a matter of law. Plaintiff alleges that the Supreme Court ruled that a minimal case in controversy standard for insurance coverage declaratory judgment actions is satisfied where, as here, insurance companies dispute their coverage obligations;

> There is here a dispute between parties who face each other in an adversary proceeding. The dispute relates to legal rights and obligations arising from the contracts of insurance. The dispute is definite and concrete, not hypothetical or abstract. Prior to this suit, the parties had taken adverse positions with respect to their existing obligations.[7]

Plaintiff further argues that Delaware Courts have applied a minimal case in controversy standard in the context of declaratory judgment coverage actions, even though judgments have not been obtained against the policy holder in an underlying action. The question of liability under insurance contracts have proved to be particularly susceptible to declaratory adjudication. Plaintiff argues that under a statute such as ours and in situations such as this, it is now generally accepted that declaratory relief is appropriate for settlement of the question of an insurance carrier's liability.[8] Also, according to the decided weight of authority, the issue of such liability is ripe for adjudication even though judgment has not been obtained against the party who asserts coverage. Furthermore, the Declaratory Judgment Act itself is declared to be remedial. Its purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations and, is to be liberally construed and administered.[9] Since the excess carriers either have denied, or presumably will deny, their obligations to pay plaintiff's defense costs and liability arising out of the Environmental Actions, the controversy is ripe for adjudication.

Plaintiff also argues that it is not required to plead particularized facts in order to satisfy the "liberal case in controversy" standard. Furthermore, plaintiff points out that its present liability exceeds $49 million and its immediate projected future liability over the next two years with respect to only ten of the sites at issue is approximately $36 million more. By the end of 1990, plaintiff will have spent approximately $85 million in damages in the underlying environmental actions. Therefore, allegedly, plaintiff has sufficiently

**6.** *McGraw–Edison, supra* at 8–9.

**7.** *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 242, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).

**8.** *Harleysville Mutual Casualty Insurance Co. v. Carroll,* Del.Super., 123 A.2d 128 at 131 (1956).

**9.** *Id.*
10 Del. C. § 6512; *See Heathergreen Commons Condomiunm Association v. Paul,* Del.Ch., 503 A.2d 636, 642 (1985).

met the requirements for an actual case in controversy and thus the excess carriers motions to dismiss should be denied.

However, the excess carriers argue that the possibility of some future controversy will not suffice. The party seeking a declaratory judgment must establish that the failure to resolve the controversy probably will have an immediate and practical impact upon him.[10] The plaintiff has failed to show that in any particular year its potential liabilities in the environmental actions will likely exhaust the policy limits underlying the excess carriers coverage.

Also, the excess carriers argue that plaintiff has the burden of proof. Plaintiff must show that a "substantial controversy" exists of "sufficient immediacy and reality toward the issue of declaratory judgment."[11] The excess carriers allege that plaintiff's reliance on the "liberal case in controversy standard" lacks merit.[12] The "liberal case in controversy" standard for insurance coverage in declaratory judgment actions is satisfied where insurance companies dispute their coverage obligations.[13] However, the excess carriers argue that Haworth supra, is distinguishable because it only dealt with the applicability of a disability waiver in a life insurance policy and is therefore not comparable to the present action. Thus, Haworth, does not hold that a dispute involving insurance coverage obligations automatically gives rise to an actual controversy. Rather, Haworth found that the specific facts before it gave rise to an actual controversy because the insured claim for coverage was a claim of a present specific right which calls not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.[14] Therefore, the excess carriers argue that

Haworth stands for the preposition that not the mere existence of a dispute determines whether an actual controversy exists but rather whether a determination of the dispute would resolve present obligations of the parties is the test to determine whether an actual controversy exists. Also, although Haworth states that the Declaratory Judgment Act should be interpreted liberally, it also stated further that the rights claimed by plaintiff must be inexistence and at risk before there is a case in controversy.[15] The excess carriers also note the holding in Maryland Casualty Company v. Pacific Coal and Oil Company, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941), "that a controversy exists where the facts alleged under all the circumstances show that there is a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Allegedly, plaintiff has not met this burden.

However, plaintiff states that it is not required to plead particularized facts in order to satisfy the ripeness standard. Plaintiff alleges that the excess carriers have attempted to create a more restrictive requirement. However, Delaware law does not require either evidence or proof that the underlying coverage will be exhausted, or that the excess carriers insurance contracts will be triggered.

The Delaware law covering this issue of ripeness is the Declaratory Judgment Act as amended in 1981. "The Act was designed to settle differences before they ripen into actual injuries."[16] According to the decided weight of authority, the issue of such liability is ripe for adjudication even though judgment has not been ob-

10. *Schick v. ACTW, supra,* at 1239.

11. *SWT Acquisition Corp. v. TW Services, Incorporated,* 700 F.Supp. 1323 (D.Del.1988).

12. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 242, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937); J.A. Appleman & J. Appleman, Insurance Law and Practice § 11353 at 314 (1980). Which states that the Liberal case and controversy standard is met where insurance companies dispute their coverage obligations.

13. *Aetna Life Ins. Co. v. Haworth, supra,* at 242, 57 S.Ct. at 464.

14. *Id.* at 242, 57 S.Ct. at 464.

15. *Aetna Life Insurance Co. v. Haworth, supra.*

16. *Harleysville Mutual Casualty Insurance Company v. Carroll, supra.*

tained. The Declaratory Judgment Act reads in pertinent part as follows:

10 *Del.C.* § 6501. Power of Courts; form and effect of declaration.

> Except where the Constitution of this State provides otherwise, Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed....[17]

The current version of the Act was adopted from the Uniform Declaratory Judgment Act. It was enacted not to change the substantive law of declaratory judgment, but to give the Courts of this state the benefit of the case law of the majority of jurisdictions which have also adopted the Uniform Declaratory Judgment Act. Therefore, while the current act does not explicitly require an "actual controversy" or "ripeness", before this Court can act on a request for declaratory judgment, these requirements remain. Previous case law set out the requirements for bringing a request for declaratory judgment under the previous Declaratory Judgment Act and therefore must be followed.[18]

█ The prerequisites necessary for a controversy to warrant declaratory relief are set forth in *Playtex, supra,* at 687–88, quoting *Marshall v. Hill,* Del.Super., 93 A.2d 524, 525 (1952); (1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claims; (3) the controversy must be between parties where interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial declaration.

When deciding whether an issue is ripe for adjudication the Court must do a bal-

ancing test. The Court must use its judicial discretion based on the factors of each case to weigh the interests of an early resolution of the controversy, judicial economy and legal stability which, when taken together, may in some cases require dismissal of the declaratory judgment action.[19] The factors to be considered in a ripeness analysis are (1) a practical evaluation of the legitimate interests of the plaintiff in a prompt resolution of the question presented; (2) the hardship that further delay may threaten; (3) the prospect of future factual development that might affect the determination made; (4) the need to conserve scarce resources; and (5) a due respect for identifiable policies of law touching upon the subject matter in dispute.[20]

However, the Court must be sure that it does not construct hypothetical factual situations on which it makes a finding, putting forth an advisory opinion. The matter would clearly not be ripe for adjudication in that situation. *See, Rollins International, Inc. v. International Hydronics Corp.,* Del.Supr., 303 A.2d 660 (1973); 10 *Del.C.* § 6506.

█ However, absolute proof that the Excess Carriers policies will be triggered is by no means required by this Court before jurisdiction under the Declaratory Judgment Act exists.[21] In cases where a dismissal was granted the allegations did not show that the claim asserted against the defendant could mature or the claims were highly unlikely to mature.

In the case *sub judice,* the first four prerequisites under *Marshall v. Hill, supra,* are met. This case involves a dispute between the insured and its insurers regarding their rights and obligations under the various insurance contracts. This is a legal controversy and the parties have real and adverse interests. However, the par-

---

17. 10 *Del.C.* § 6501.

18. *See, Schick v. Amalgamated Clothing and Textile Workers Union,* Del.Ch., 533 A.2d 1235, 1238 (1987), *See,* also, *Playtex Family Products, Inc. v. St. Paul Surplus Lines Insurance Co., et al.,* Del.Ch., 564 A.2d 681 (1989).

19. *See, Schick, Inc. v. ACTWU, supra,* at 1238 footnote 2 and the cases cited therein.

20. *See, Schick, Inc. v. ACTWU, supra; Bank of Delaware v. Allstate Insurance Co.,* Del.Super., 448 A.2d 231 (1982).

21. *Id.*

ties dispute whether the fifth prerequisite, i.e., ripeness, is met and the Court must resolve this issue.

After considering the circumstnces of this case and applying them to the ripeness analysis set forth in *Schick, Inc. v. ACT-WU, supra,* the Court finds that plaintiff has a ripe controversy. The plaintiff alleges that its present liability exceeds $49 million and that its future liability will be at least $36 million more. Also, plaintiff has expended sums in connection with the Environmental Actions at issue. These costs may implicate some of the excess carriers. This Court should afford a prompt resolution of this matter for the plaintiff to avoid delayed, sporatic and costly litigation. The plaintiff would suffer a hardship if this case were needlessly delayed because plaintiff has expended sums in this litigation, and in connection with the Environmental Actions at issue. Also, plaintiff alleges that it is presently liable for damages pursuant to the underlying Environmental actions. Some excess carriers may be obligated to pay these costs. Unlike other declaratory judgment cases that have been dismissed, this case does not involve a remote issue. Plaintiff's liability is a present liability and more disputes as to rights and obligations under the insurance contracts involved are highly likely to arise in the near future. The plaintiff is not required to prove that the excess carriers insurance coverage will be triggered but plaintiff has made a sufficient showing that due to its current and future liability and considering the magnitude of this case it is likely that the excess carriers coverage will be triggered. In weighing the concerns of judicial economy and legal stability, the best interests of justice are served if plaintiff's claims surrounding its current liability and future liabilities are all resolved uniformly by this Court. Therefore, the Court finds that a ripe case in controversy exists and thus denies the excess carriers motions to dismiss on justiciability grounds.

IT IS SO ORDERED.