BALDINI WEST, INC., a Delaware corporation, 4 Nichols Avenue, Wilmington, Delaware 19803, Plaintiff,

v.

NEW CASTLE COUNTY, a political subdivision of the State of Delaware, Defendant.

Civ. A. No. 94–72–RRM.

United States District Court, D. Delaware.

April 15, 1994.

Richard K. Herrmann and Scott R. Harrison, Bayard, Handelman & Murdoch, P.A., Wilmington, DE, for plaintiff.

Barry M. Willoughby and Bhavana Sontakay, Young, Conaway, Stargatt & Taylor, Michael Mitchell, First Asst. County Atty., Wilmington, DE, for defendant.

## MEMORANDUM OPINION

McKELVIE, District Judge.

In this civil rights case, the plaintiff, a property owner in New Castle County, Delaware, alleges that the defendant, New Castle County, illegally amended its zoning laws without giving the plaintiff sufficient notice. The plaintiff alleges that the County's action violated the Due Process and Equal Protection clauses of the United States Constitution, and state and county statutes. The plaintiff has moved the Court to issue a preliminary injunction enjoining the County from enforcing the allegedly illegal zoning ordinance. The defendant has moved for judgment on the pleadings. The briefing on these motions is complete, and the Court heard oral argument on April 6, 1994. The plaintiff has moved to strike a portion of one of the defendant's briefs, and has moved for the imposition of costs. The plaintiff argues that the defendant violated Local Rule 7.1.1(c), which prohibits sur-reply briefs without prior approval of the Court. This is the Court's decision on these motions.

*FACTS*

On September 24, 1993, the plaintiff, Baldini West, Inc., purchased 63 acres of undeveloped land in New Castle County, Delaware. Docket Item, ("D.I.") 5, p. 4. For many years, this property has been zoned "R–2." The substance and legality of the R–2 zoning restrictions is not in dispute here. It appears that under the R–2 zoning regulations, if the specified requirements are met, the plaintiff would have the right to build approximately 1.6 dwelling units per acre. *See* D.I. 5, pp. 5–6. The plaintiff intends to develop its property, and to that end has

been in contact with County zoning officials since June of 1993. D.I. 1, ¶ 38.

In 1991, the County amended its zoning laws to add Article XX. Article XX creates a "Water Resource Protection Area District" ("WRPAD"). Property within the WRPAD is subject to restrictions set out in Article XX, in addition to the regulations previously in place. The plaintiff states that if his property is found to be within the WRPAD, he might be limited to building less than one dwelling unit per acre. *See* D.I. 5, pp. 5–6.

The areas to be included in the WRPAD are defined in Article XX in general terms, taking account of such features as underlying rock formations, drainage areas, and proximity to water wells. County Code § 23–123.-1(b). The County commissioned a Map to be made which would show which properties are within the WRPAD. The original Map did not place the plaintiff's property within the WRPAD. Properties are presumed to be within the WRPAD if so indicated by the Map. *Id.* A property owner who believes that the Map erroneously places his property in the WRPAD can commission a report, and can submit the report to the Department of Planning and request that the Map boundaries be redrawn. County Code § 23–136. The contents of the report must meet the specifications set out in County Code § 23–136(a), and must "clearly demonstrate that the area in question does not meet the definition of a Water Resource Protection Area District." County Code § 23–136(a)(4). The Department of Planning's decision, and any other zoning decision, can be appealed to the Superior Court. 9 *Del.C.* § 1353(a).

In 1992 and 1993, the Water Resources Agency and the Department of Planning drew a new Map. This "1993 Map Series" is based on hydrogeological analyses and reports prepared by the Delaware Geological Survey and private consulting firms. D.I. 11, A–0. This new Map showed the plaintiff's property to be within the WRPAD. On September 14, the County Council introduced Ordinance No. 93–170. The Ordinance, when passed, would adopt the new Map, and make minor changes to Article XX not in dispute here. The Ordinance was the subject of a public hearing on October 5, 1993. D.I. 1,

¶ 22 The hearing was publicized through a short announcement in The News Journal, a daily newspaper published in Wilmington. *Id.* The Ordinance was also discussed at a Public Works & Planning Committee Workshop on December 14, 1993. D.I. 11, A–30.

On December 20, 1993, the plaintiff submitted an exploratory sketch to the County, proposing development of 97 residential units under the R–2 zoning classification. D.I. 5, App. B, p. 2. It was at this time that the plaintiff first learned that his property would be affected by the Ordinance. D.I. 1, ¶ 37, 39. Until this time, the County did not give personal notice to the plaintiff that the Ordinance would affect the plaintiff's property rights. The plaintiff alleges that some property owners received personal warnings that the County would adopt a new Map, and some of these property owners were able to advance their development projects quickly enough to vest their rights in certain development projects before the County passed the Ordinance.

The Ordinance was scheduled to be debated at the County Council meeting of December 21. The agenda of the December 21 meeting was publicized through two short announcements in The News Journal. D.I. 5, p. 7, Exs. G & H. The plaintiff requested that the Council delay its consideration of the Ordinance. The Ordinance was tabled at the December 21 meeting. D.I. 5, p. 11. The County Council discussed and passed the Ordinance on January 11, 1994. D.I. 1, ¶ 40, 41. The plaintiff's counsel was present at the January 11 meeting, where he "pointedly advised" the Council of the plaintiff's belief that the notice given regarding the Ordinance did not conform with County or State law. D.I. 5, p. 11.

On January 12, 1994, the Department of Planning wrote to the plaintiff, commenting on the plan which the plaintiff submitted on December 20. The letter stated that the property is located within the WRPAD, there may be insufficient access to the public sewer, the open space is inadequate and poorly placed, more landscape buffers are needed, and stormwater management needs to be improved. D.I. 5, App. L. The defendant

has submitted evidence that the property will not have access to sewers. D.I. 11, A–3.

The plaintiff asserts three causes of action. He alleges that he did not receive such notice of the Ordinance as is required by the Due Process Clause of the Fourteenth Amendment to the United State Constitution. He alleges that because the County warned some property owners that a new Map was being drawn, but did not warn the plaintiff, the County violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Finally, the plaintiff alleges that the County violated 9 *Del.C.* § 2607(b) and County Code § 23.85.-1(6) and (7), which relate to the notice that must be given when certain zoning decisions are made.

*DISCUSSION*

■ The defendant argues, and the Court finds, that the case should be dismissed because it is not ripe.

The Third Circuit held as recently as last October that:

"a constitutional challenge to a land-use decision is not ripe unless state authorities are given an opportunity to arrive at a final, definitive position regarding how they will apply the regulations at issue to the particular land in question."

*Acierno v. Mitchell*, 6 F.3d 970, 974 (3rd Cir.1993).

The adoption of the Ordinance does not constitute a final, or even preliminary determination regarding what the plaintiff may build on its land. In fact, even if the plaintiff's land is within the WRPAD, the plaintiff's intended use might eventually be permitted by the zoning officials. *See* D.I. 5, App. L (the Department of Planning stated that the plaintiff's "proposed use may be permitted as a conditional use pursuant to Section 23–133").

The adoption of the Ordinance does not even constitute a final determination regarding whether the plaintiff's property is located within the WRPAD. The plaintiff has the right to challenge the Map's boundaries pursuant to County Code § 23–136. The Ordinance does represent a determination that the County will presume that the use of the plaintiff's land is restricted by the provisions of Article XX, and that the plaintiff cannot overcome this presumption without commissioning expensive reports. The record indicates that these reports may cost the plaintiff $140,000. *See* D.I. 20, pp. 5–6. However, even this purported injury is not ripe for review. At this point, the plaintiff is far from establishing that it would be permitted to develop its property as it desires but for the restrictions of Article XX. The letter from the Department of Planning indicates that the plaintiff's proposed use may violate numerous R–2 zoning restrictions, which are concededly valid. *See* D.I. 5, App. L. In particular, the plaintiff's development might be unfeasible due to inadequate sewer access. *Id.;* D.I. 11, A–3, 4. If the plaintiff finds that he cannot satisfy the R–2 regulations, the demands of the Ordinance and Article XX can cause no further injury. As the plaintiff has not established that it sustained or is in immediate danger of sustaining injury from the Ordinance, this case is not ripe. *SWT Acquisition Corp. v. TW Services, Inc.,* 700 F.Supp. 1323, 1328 (D.Del.1988) (Schwartz, C.J.).

Furthermore, assuming that it could satisfy the R–2 regulations, the plaintiff might be able to avoid the expense of fighting the Map boundaries by applying for a variance pursuant to 9 *Del.C.* § 1352. The Supreme Court has held that a constitutional challenge to a zoning decision may be unripe where the plaintiff has failed to apply for a variance. *See Williamson Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 200, 105 S.Ct. 3108, 3123, 87 L.Ed.2d 126 (1985).

Finally, the plaintiff's case is not ripe because it appears that the plaintiff may challenge the validity of the Ordinance, and the validity of applying the Ordinance to the plaintiff's property, before the zoning Board of Adjustment.

The jurisdiction of the Board of Adjustment is defined by 9 *Del.C.* § 1352, which reads in relevant part as follows:

(a) The Board of Adjustment shall be empowered to hear and decide:

(1) Appeals in zoning matters where error is alleged in any order, requirement,

decision or determination made by an administrative officer or agency in the enforcement of any zoning ordinance, code, regulation or map;

. . . .

(e) In the exercise of its powers, the Board of Adjustment may ... make such order, requirement, decision or determination as ought to be made....

The plaintiff argues that this section does not empower the Board of Adjustments to question the validity of ordinances passed by the County Council. The Court believes that the Board of Adjustments does have this power. The Board of Adjustments may hear cases where a zoning official allegedly committed an "error." If an ordinance is unconstitutional, it would be an error to apply the ordinance. The Board of Adjustments may make decisions "as ought to be made." The Board of Adjustments, and every other government agency, ought to act in a manner consistent with the dictates of the Constitution. The Court will not assume that the Delaware legislature intended to create an adjudicatory body that is free to disregard the Constitution.

The Court does not intend to bind the Board of Adjustment to the Court's interpretation of section 1353 in this or any other case. The Court merely holds that the plaintiff has not met the "high burden of proving that a final decision has been reached." *See Acierno,* 6 F.3d at 975.

■■■ The plaintiff also argues that its suit is ripe because if it waits until the Board of Adjustments makes a final determination, the suit may be barred by the applicable statute of limitations. *See* 10 *Del.C.* § 8126(a) (60 day statute of limitations for challenging legality of zoning law). The Court finds this argument unpersuasive. The doctrine of ripeness is based in part on the Constitutional requirement that a "case or controversy" be before the Court. *Acierno,* 6 F.3d at 974; *see* U.S. Const. art. III, § 2, cl. 1 (defining the judicial power of the United States). If there is no case or controversy before the Court, the Court must dismiss the suit, regardless of the dictates of a state statute of limitations. The Court is sympathetic to the argument that federal courts should be available to protect federal rights. However, this Court has previously held that constitutional challenges to zoning ordinances are not governed by § 8126(a). *Amico v. New Castle County,* 101 F.R.D. 472, 480 (D.Del.1984) (applying three year limitations period). The Court notes that there is no guarantee that the federal courts will provide a forum for disputes between Delaware citizens involving rights established by Delaware law. *Cf.* 28 U.S.C. § 1367(c) (federal courts may decline to exercise jurisdiction over state law claims).

*CONCLUSION*

The Court finds that this case is not ripe, and therefore will grant the defendant's motion for judgment on the pleadings, and will deny the plaintiff's motion for a preliminary injunction.

The Court also finds that all of the defendant's reply brief is pertinent to the defendant's motion for judgment on the pleadings for failure to state a claim upon which relief can be granted. The Court therefore will deny the plaintiff's motion to strike part of the brief and impose costs.